No. 52,060

CLETA ROSE DAVIS and ROYAL E. DAVIS, *Appellees,* v. DANNY HUGHES, RON WEST, and WESTERN CASUALTY & SURETY COMPANY, *Appellants.*

(622 P.2d 641)

92

Opinion filed January 17, 1981.

*Barry E. Warren,* of Wallace, Saunders, Austin, Brown & Enochs, of Overland Park, argued the cause, and *Barton Brown,* of the same firm, was with him on the brief for the appellants.

*Jay Thomas,* of Barnett & Lerner, Chartered, of Kansas City, Kansas, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

McFARLAND, J.: This is an appeal by Western Casualty & Surety Company from an order of the district court: (1) authorizing the stacking of benefits of three uninsured motorist coverages; (2) authorizing the stacking of personal injury protection (PIP) benefits of three coverages; and (3) retrospectively applying the repeal of K.S.A. 1976 Supp. 40-3113(*e*) relative to the setoff of paid PIP benefits from uninsured motorist benefits due.

The appeal is before us upon an agreed statement of the case pursuant to Supreme Court Rule No. 3.05 (225 Kan. xxxvii). The agreed facts are summarized as follows:

The case arises out of an automobile accident which occurred January 6, 1975. The injured plaintiff, Cleta Rose Davis, was a passenger in a 1972 Oldsmobile Toronado being operated by her husband and plaintiff, Royal E. Davis. The accident occurred in Kansas City, Kansas, when the vehicle operated by Davis was hit by an automobile operated by one of the defendants, Danny Hughes, at or near the intersection of K-32 and 32nd Street. At the time of the accident the automobile was owned by defendant Ron West. Likewise, at the time of the accident the driver of the West vehicle, Danny Hughes, was an uninsured motorist within the meaning of K.S.A. 40-284. As a result of the automobile accident, plaintiff Cleta Rose Davis incurred medical expenses in excess of $7,000 and at the time of the trial on September 26, 1978, was unable to return to her employment as a licensed practical nurse.

At the time of the accident there were two insurance policies in force and effect which are directly involved in the current litigation. Both policies were issued by Western Casualty & Surety Company (Western). The first policy was issued to Royal E. Davis. As originally issued, said policy covered two vehicles, to wit: (1) a 1969 Ford ½-ton pickup; and (2) a 1971 Maverick 4-door

sedan, wherein separate premiums were charged for each vehicle and so recorded on the declaration page of said policy. On or about October 2, 1974, Royal E. Davis caused a 1972 Toronado automobile to be added to the policy and the 1971 Maverick to be eliminated therefrom. In addition, Linda Sue Davis, a daughter of the plaintiffs, was added as an insured. The aforementioned policy insuring the two vehicles provided for uninsured motorist benefits in the amount of $15,000 per person and PIP benefits in the amount of the required statutory minimum. A separate premium was charged to each vehicle under said policy for the various coverages afforded each vehicle. The policy period for this policy was August 1, 1974, to August 1, 1975.

The second insurance policy involved was issued to Michael R. Gillette. Said policy provided coverage in the amount of $15,000 per person for uninsured motorist benefits and the statutory minimum for PIP benefits. At the time of the accident involving Cleta Rose Davis, Michael R. Gillette was married to the daughter of Mrs. Davis and was residing at the same address with Cleta Rose and Royal E. Davis. The Gillette policy insured one motor vehicle and was in full force and effect.

Following the accident, plaintiff Cleta Rose Davis submitted claims for medical bills pursuant to the PIP provisions of the Davis policy, which claims have been paid up to the $2,000 limit of coverage.

In addition, Cleta Rose Davis applied for disability benefits (wage loss) pursuant to the PIP provisions of the Davis policy. The total amount of disability benefits received by Cleta Rose was $6,320.60 and was calculated on the basis of 52 weeks. The period covered began on April 1, 1975, and concluded on March 29, 1976. No PIP benefits have been applied for pursuant to the Gillette policy and no benefits have been paid pursuant to said policy, but said benefits have been claimed as a part of this lawsuit.

The action herein was commenced on January 5, 1977. The trial court ultimately entered judgment in favor of Cleta Rose Davis and against defendant Danny Hughes in the amount of $55,000. The court further held: (1) The three uninsured motorist coverages (two in the Davis policy and one in the Gillette policy) could be stacked; (2) the three PIP coverages could be stacked; and (3) the repeal of K.S.A. 1976 Supp. 40-3113(e) should operate ret-

rospectively. Western appeals the trial court's determinations relative to insurance coverage.

We turn now to resolution of the issues raised. The first issue relates to stacking of uninsured motorist benefits. The first point therein is whether such stacking of benefits is permitted under a single policy which insures two vehicles. The Davis and Gillette policies each provide:

### "CONDITIONS

"5. Limits of Liability: Regardless of the number of automobiles to which this policy applies:

. . . .

"Coverage K: [uninsured motorist] The limit of liability for coverage K stated in the declarations as applicable to 'each person' is the limit of The Western's liability for all damages because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting each person, the limit of liability stated in the declarations as applicable to 'each accident' is the total limit of The Western's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident."

Western concedes that Kansas courts have generally allowed stacking of uninsured motorist coverage. However, as noted by Western, no Kansas appellate case has dealt with the issue of whether, under mandatory uninsured motorist coverage, stacking is permitted under one policy insuring two vehicles.

Western relies heavily on *Sturdy v. Allied Mutual Ins. Co.,* 203 Kan. 783, 457 P.2d 34 (1969). The following excerpt from *Sturdy* at 785, places *Sturdy* in proper context:

"Many of the cases present different factual situations and some turn on the question whether various policy limitations and exclusions amount to restriction of mandatory statutory coverage. We have no such question as the coverage here is a voluntary type, the insurance contract having been executed prior to the effective date of our recently enacted uninsured motorist law (K.S.A. 1968 Supp. 40-284, *et seq.*)."

The facts in *Sturdy* involve an injured plaintiff owning two vehicles insured under one policy. The plaintiff contended he could stack each of the two coverages of $10,000. The insurance company contended he could not stack the two coverages by virtue of an "other insurance" clause. This court held that the second coverage in the same policy was not "other insurance." In permitting the stacking of coverage this court held:

"It must be borne in mind the purpose of uninsured motorist insurance is to provide compensation for personal injury to the innocent victim of the uninsured motorist. As to the named insured the coverage is a contract benefit for which he

has paid. Here the damage to the insured has been determined and he now seeks indemnity for it. He is not seeking any windfall as a result of his injury but he is seeking full indemnity based on payment of two separate premiums. Applying traditional rules of construction we think he is entitled to that coverage. Of the two constructions which could be placed on the limitation of coverage in this particular policy under these facts, this conclusion effectuates insurance as to each automobile mentioned in the policy and permits recovery rather than forfeiture of a benefit for which the insured has paid. Defendant seeks to avoid fully indemnifying its insured on what we believe to be an overly strict construction of its policy in its favor. If it were intended to restrict the limit of liability to $10,000 in one policy where more than one automobile is covered, this could have been very easily accomplished in plain, unmistakable language, as was done in *Hilton.* [*Hilton v. Citizens Insurance Company of New Jersey,* 201 So. 2d 904, (Fla. App. 1967).] We are accustomed to purchasing insurance which follows the person in units or multiples, with the premium fixed by the insurer accordingly (the premium, of course, is subject to state regulation). When we pay a double premium we expect double coverage. This is certainly not unreasonable but, to the contrary, is in accord with general principles of indemnity that amounts of premiums are based on amounts of liability. Defendant argues that what plaintiff is seeking amounts to pyramiding coverage but nothing is said about pyramiding the premiums which effectuate the coverages. We would not be understood as implying that an injured insured can pyramid separate coverages in the same policy so as to recover more than his actual loss (see *Rosson v. Allied Mutual Ins. Co.,* No. 45,384, 203 Kan. 795, 457 P.2d 42)." *Sturdy* at 792-793.

Western contends *Sturdy* stands for the proposition that an insurer may by express language limit uninsured motorist coverage in a multiple vehicle policy to one coverage. As previously noted, however, *Sturdy* involved voluntary uninsured motorist coverage rather than mandatory coverage.

Uninsured motorist coverage is mandated by K.S.A. 40-284, which provides:

"**40-284. Coverage relating to injury or death caused by uninsured motorist; rejection; renewal policies; effect of prior policies.** No automobile liability insurance policy covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, unless the policy contains or has endorsed thereon, a provision with coverage limits not less than the limits for bodily injury or death set forth in K.S.A. 1967 Supp. 8-729, providing for payment of part or all sums which the insured or his legal representative shall be legally entitled to recover as damages from the uninsured owner or operator of the motor vehicle because of bodily injury, sickness or disease, including death, resulting therefrom, sustained by the insured, caused by accident and arising out of ownership, maintenance or use of such motor vehicle, or providing for such payment irrespective of legal liability of the insured or any other person or organization. *Provided,* That the coverage required under this

section shall not be applicable where any insured name in the policy shall reject the coverage in writing: *Provided further,* That unless the insured named in the policy requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued him by the same insurer. Provisions affording such insurance protection against uninsured motorists issued in this state prior to the effective date of this act shall, when afforded by any authorized insurer, be deemed, subject to the limits prescribed in this section, to satisfy the requirements of this section."

This court has repeatedly held that K.S.A. 40-284 is to be liberally construed. *Hillhouse v. Farmers Ins. Co.,* 226 Kan. 68, 595 P.2d 1102 (1979); *Simpson v. Farmers Ins. Co.,* 225 Kan. 508, 592 P.2d 445 (1979); *Van Hoozer v. Farmers Insurance Exchange,* 219 Kan. 595, 549 P.2d 1354 (1976); *Forrester v. State Farm Mutual Automobile Ins. Co.,* 213 Kan. 442, 517 P.2d 173 (1973); *Clayton v. Alliance Mutual Casualty Co.,* 212 Kan. 640, 512 P.2d 507, *reh. denied* 213 Kan. 84, 515 P.2d 1115 (1973); *Winner v. Ratzlaff,* 211 Kan. 59, 505 P.2d 606 (1973).

In *Simpson v. Farmers Ins. Co.,* 225 Kan. 508, 511-512, this court's rationale is well stated relative to policy provisions attempting to dilute uninsured motorist coverage:

"After the uninsured motorist statute was enacted, some insurance companies attempted to dilute the broad coverage contemplated by K.S.A. 40-284. In *Clayton v. Alliance Mutual Casualty Co.,* 212 Kan. 640, 512 P.2d 507 (1973), the insurance policy contained clauses described as the 'consent to sue' clause, the 'arbitration' clause, the 'other insurance' clause, the 'proof of loss' clause, the 'medical authorization' clause, and the 'furnishing of medical reports' clause. All of them placed certain restrictions on the right of the insured to bring an action against the insurance company under the uninsured motorist coverage. This court held that all of the clauses were an attempt to place requirements on the insured which constituted a condition precedent to the commencement of an action to recover damages under an uninsured motorist endorsement and were void and of no effect as an attempt to condition, limit, or dilute the statutory mandate of uninsured motorist coverage under K.S.A. 40-284.

"A similar problem was before the court in *Van Hoozer v. Farmers Insurance Exchange,* 219 Kan. 595, 549 P.2d 1354 (1976). The policy involved in that case contained a provision that, in substance, stated that any loss payable under the uninsured motorist coverage should be reduced by any amount paid or payable to the insured under any workmen's compensation law, disability benefits law, or any similar law. It was held that the trial court was correct in striking down that provision since it was void and of no effect as an attempt to limit or dilute the statutory mandate of uninsured motorist coverage. The policy also contained a provision which prohibited the stacking of policies owned by the insured. This provision was also held to be invalid as being contrary to the provisions of the statute. The policy in *Van Hoozer* contained another provision which sought to

define the word 'insured' under the uninsured motorist coverage in such a way as to eliminate some of the coverage contemplated by the statute. This was likewise held to be invalid. *Van Hoozer,* like *Clayton,* is important to the resolution of the case now before us because it supports the rule that insurance policy provisions which purport to condition, limit, or dilute the broad, unqualified uninsured motorist coverage mandated by K.S.A. 40-284, are void and unenforceable.

"In all of the cases just discussed, this court has made it crystal clear that the uninsured motorist statute is remedial in nature and should be liberally construed to provide a broad protection to the insured against all damages resulting from bodily injuries sustained by the insured, caused by an automobile accident, and arising out of the ownership, maintenance, or use of the insured motor vehicle, where those damages are caused by the acts of an uninsured motorist. A provision placed in the policy by an insurance company which denies protection to an insured for damages and injuries caused by a 'hit and run' vehicle unless there is actual physical contact between the vehicles, like the various policy restrictions discussed in *Clayton* and *Van Hoozer,* is an attempt to limit or dilute the unqualified uninsured motorist coverage mandated by K.S.A. 40-284 and is therefore void and unenforceable. The rationale of *Clayton* and *Van Hoozer* is clearly applicable to such a restrictive provision."

In *Van Hoozer v. Farmers Insurance Exchange,* 219 Kan. 595, referred to in *Simpson v. Farmers Ins. Co.,* 225 Kan. at 511-512, the injured insured had a separate policy of insurance on each of his two motor vehicles. Stacking of the uninsured motorist coverage of the two policies was permitted. Western contends a different result should be reached when both vehicles are insured in the same policy. We do not agree.

Western relies heavily on *Pettid v. Edwards,* 195 Neb. 713, 240 N.W.2d 344 (1976), wherein the Nebraska Supreme Court disallowed stacking of uninsured motorist benefits where a single policy insured more than one vehicle.

The Missouri Court of Appeals reached the same result as did Nebraska, in *Automobile Club Inter-Insur. Exch. v. Diebold,* 511 S.W.2d 135 (Mo. App. 1974). However, in *Cameron Mut. Ins. Co. v. Madden,* 533 S.W.2d 538 (Mo. 1976), the Missouri Supreme Court specifically overruled the *Diebold* case. In so doing the Court quoted with approval at pp. 543-544 the following from *Tucker v. Government Employees Insurance Co.,* 288 So. 2d 238, 242 (Fla. 1973):

"An insured under uninsured motorist coverage is entitled by the statute to the full bodily injury protection that he purchases and for which he pays premiums. It is useless and meaningless and uneconomic to pay for additional bodily injury insurance and simultaneously have this coverage cancelled by an insurer's exclusion. The premium rates are standard and uniform on a per car basis. The insured's full protection cannot be whittled away by exclusions or limitations

which presuppose he only intended to cover himself on the presumed basis of single car auto liability coverage had the uninsured motorist purchased the same. Compare Dyer v. Nationwide Mutual Fire Ins. Co. (Fla. 1973), 276 So. 2d 6, and particularly see Employers Liability Assurance Corp., Ltd. v. Jackson (1973), 289 Ala. 673, 270 So. 2d 806.

"We must not confuse uninsured motorist protection as inuring to a particular motor vehicle as in the case of automobile liability insurance. It is bodily injury insurance which protects against such injury inflicted by the negligence of any uninsured motorist.

"It is an anomaly to contend that if two automobiles are combined in the coverage of one auto liability insurance policy with uninsured motorist protection added that an exclusion of the kind here involved may be validly inserted, but that if a separate policy covered each automobile such exclusion is invalid. The mere form of a policy—a combination coverage—should not be the predicate for an exclusion of additional coverage."

We agree with this rationale. We note that the Missouri Court of Appeals approved the holding of *Madden* in *Linderer v. Royal Globe Ins. Co.,* 597 S.W.2d 656 (Mo. App. 1980), although denying stacking of uninsured motorist coverage in a fleet policy insuring 1,420 vehicles.

Royal E. Davis insured two vehicles, paying two separate premiums for each vehicle. A separate premium was paid for each uninsured motorist coverage. Whether the insurance company issued one or two policies of insurance logically should have no bearing on whether the uninsured motorist coverages can be stacked. The provision in the Davis policy purporting to limit uninsured motorist coverage is void and unenforceable.

We conclude the trial court did not err in determining that the injured plaintiff could stack both uninsured motorist coverages available under the Davis policy.

The second point to be determined in this issue is whether the trial court erred in concluding that the injured plaintiff could stack the uninsured motorist coverage in the Gillette policy on the uninsured motorist coverages in the Davis policy.

Western contends an injured insured should be limited to one $15,000 uninsured motorist coverage, regardless of the number of policies involved. This court has previously held uninsured motorist coverage in two policies may be stacked up to the full amount of damages sustained. *Welch v. Hartford Casualty Ins. Co.,* 221 Kan. 344, Syl. ¶ 4, 559 P.2d 362 (1977); *Van Hoozer v. Farmers Insurance Exchange,* 219 Kan. 595, Syl. ¶ 6. As a relative in the same household with Gillette, there is no issue as to the

eligibility of Cleta Rose Davis for uninsured motorist benefits under the Gillette policy.

In keeping with the rationale expressed herein and in the long line of cases before this court relative to uninsured motorist coverage, we conclude the trial court did not err in permitting the stacking of the uninsured motorist coverages of the Gillette and Davis policies.

The next issue concerns the stacking of PIP benefits under the Davis and Gillette policies. Subsequent to the trial court's decision herein, this court determined *McNemee v. Farmers Insurance Group,* 228 Kan. 211, 612 P.2d 645 (1980), which is dispositive of the issue as to whether the Davis policy coverage could be "stacked" on the Gillette policy coverage. In *McNemee* the injured insured had a separate policy on each of his three vehicles. The policies contained the following provision in their PIP endorsements:

" 'Exclusions
" 'This coverage does not apply:
" '(a) to bodily injury sustained by the named insured or any relative while occupying any motor vehicle owned by the named insured which is not *an insured motor vehicle;'* Emphasis supplied." 228 Kan. 212.

"Insured motor vehicle" was defined as follows:

" ' "[I]nsured motor vehicle" means a motor vehicle of which the named insured is the owner and with respect to which (a) the bodily injury liability insurance *of the policy* applies and for which *a specific premium is charged,* and (b) the named insured is required or has elected to maintain security required under the Kansas Automobile Injury Reparations Act;' Emphasis supplied." 228 Kan. 213.

The court, in *McNemee,* noted K.S.A. 1979 Supp. 40-3108($a$) which provides:

"Any insurer may exclude benefits required by subsection (*f*) of section 7 [40-3107] of this act: (*a*) For injury sustained by the named insured and relatives residing in the same household while occupying another motor vehicle owned by the named insured and not insured under the policy, or for injury sustained by any person operating the insured motor vehicle without the expressed or implied consent of the insured;"

This court then held at 213:

"It is apparent that the policy exclusion with which we are concerned in the present case was inserted in the endorsement to prevent the 'stacking' of coverages and that the exclusion is authorized by the statute. The question in this case is whether 'stacking' of PIP medical benefits is permitted. We hold that it is not. Any

insurer may exclude benefits required by the Kansas Automobile Injury Reparations Act: For injury sustained by the named insured and relatives residing in the same household while occupying another motor vehicle owned by the named insured and not insured under the policy, or for injury sustained by any person operating the insured motor vehicle without the expressed or implied consent of the insured. When, as in the present case, the exclusion has been inserted in a PIP endorsement, the exclusion is binding on the parties. The exclusion is authorized by statute and governs the extent of personal injury protection benefits recoverable when inserted in an insurance contract."

The Davis and Gillette policies contain the following provision:

**"Limits of Liability**
"Regardless of the number of persons insured, policies or bonds applicable, claims made or insured motor vehicles to which this coverage applies, the Company's liability for personal injury protection benefits with respect to bodily injury sustained by one person in any one motor vehicle accident is limited as follows:"

The limitations then state the statutory minimums as provided in K.S.A. 1979 Supp. 40-3103(b),(d),(k),(r),(w), and (y). "Insured motor vehicle" is defined in both policies in the exact language of the policy in *McNemee.*

In the issue relative to stacking of uninsured motorist coverages, plaintiffs successfully argued that whether their two vehicles were insured in one or separate policies should have no bearing on the coverage purchased. On the issue relative to stacking of PIP benefits under the Davis policy, plaintiffs contend the fact the two vehicles were insured in the same policy makes K.S.A. 1979 Supp. 40-3108(a) inapplicable. We do not agree. The intent of the statute is to permit insurance carriers to insert provisions in policies preventing "stacking" of PIP benefits—regardless of whether one or two policies are involved.

We conclude the trial court erred in determining that the PIP coverages could be stacked. The only PIP coverage available to Mrs. Davis is that of the vehicle involved in the collision.

The third issue involves which PIP benefits are subject to stacking. Inasmuch as we have previously determined PIP benefits may not be stacked, this issue is moot.

The final issue is whether the trial court erred in applying the repeal of K.S.A. 1976 Supp. 40-3113(e) retrospectively. The statute in question provided PIP benefits "shall be deducted from any recovery received by an injured person under uninsured motorist coverage, as provided by K.S.A. 40-284 or any amend-

ments thereto." K.S.A. 1979 Supp. 40-3113a replaced K.S.A. 1976 Supp. 40-3113 and the setoff provision was eliminated therein.

The time sequence of events is as follows:

| | |
|---|---|
| January 1, 1974 | Effective date of K.S.A. 40-3113 |
| January 6, 1975 | Date of injury-producing accident |
| Post-January 6, 1975 | Payments of personal injury protection benefits by defendant to plaintiff |
| January 5, 1977 | Suit filed by plaintiff against the three defendants herein |
| July 1, 1977 | Effective date of K.S.A. 1977 Supp. 40-3113a, repealing and replacing K.S.A. 1976 Supp. 40-3113 |
| September 26, 1978 | Recovery of damages by plaintiff |

*Nitchals v. Williams,* 225 Kan. 285, 590 P.2d 582 (1979), involved the issue of whether K.S.A. 1979 Supp. 40-3113a(*e*), relative to apportionment of attorney fees upon recovery of PIP benefits from a third-party tortfeasor, should be given prospective or retrospective application. The court restated the general rules of statutory construction and determined the issue as follows in Syl. ¶¶ 1-5:

"The general rule of statutory construction is that a statute will operate prospectively unless its language clearly indicates that the legislature intended that it operate retrospectively. This rule is normally applied when an amendment to an existing statute or a new statute is enacted which creates a new liability not existing before under the law or which changes the substantive rights of the parties."

"The general rule of statutory construction is modified where the statutory change is merely procedural or remedial in nature and does not prejudicially affect the substantive rights of the parties."

"While generally statutes will not be construed to give them retrospective application unless it appears that such was the legislative intent, nevertheless when a change of law merely affects the remedy or law of procedure, all rights of action will be enforced under the new procedure without regard to whether they accrued before or after such change of law and without regard to whether or not the suit has been instituted, unless there is a savings clause as to existing litigation."

"A statute which authorizes the recovery of attorney fees in litigation is procedural or remedial in nature, and when a change in the law permits the recovery of attorney fees, it may be applied retrospectively to pending cases."

"K.S.A. 1977 Supp. 40-3113a(*e*), which authorizes an apportionment of attorney fees between an insured and an insurance carrier that has paid PIP benefits, should be applied retrospectively in all pending no-fault insurance cases where the insured had not yet obtained a recovery from a third-party tortfeasor 'by judgment, settlement, or otherwise' prior to July 1, 1977."

In a rather confusing opinion, the trial court herein initially concludes that K.S.A. 1976 Supp. 40-3113(*e*) creates a substantive legal right of setoff and later affords retrospective application to its repeal, based upon a conclusion that the statute is remedial in nature.

Apportionment of attorney fees may be distinguished from setoff of benefits. The attorney fee issue cannot arise until such time as a recovery has been made against a third-party tortfeasor. This is clearly a procedural or remedial situation. As noted in *Nitchals*, 225 Kan. at 294:

"From the authorities set forth above, we have concluded that K.S.A. 1977 Supp. 40-3113a)(*e*) involves a matter of procedure or remedy and should be applied retrospectively unless it can be said that a retrospective application of the statute would impair *vested* substantive rights of the insurance carrier. The answer to this question must depend on the point in time when the right of the insurance carrier to 'reimbursement' under the old statute, or to 'subrogation' under the new statute, accrued or became a vested right. The insurance companies take the position that the right of a PIP carrier to reimbursement or subrogation under the statute becomes fixed or vested either on (1) the date the policy was issued, (2) the date the insured suffered personal injuries, or (3) the date the PIP carrier paid the insured PIP benefits. We have analyzed both the old and new statutes and have concluded that in each of them the PIP carrier's right to reimbursement or subrogation accrues or becomes vested only after a recovery by the insured from the third-party tortfeasor by judgment, settlement, or otherwise. Under the former statute, K.S.A. 1975 Supp. 40-3113, no subtraction from PIP benefits is to be made because of the value of a claim in tort based upon the same bodily injuries. A subtraction shall be made, however, *after recovery of damages* by judgment, settlement, or otherwise by the injured insured. It is obvious that no right of reimbursement accrues to the insurance carrier simply because an injury has occurred or PIP benefits are paid. Clearly the event which brings into existence the PIP carrier's right of reimbursement is the recovery of damages by the insured. The same conclusion must be reached from the language used in the new statute, K.S.A. 1977 Supp. 40-3113a. Under the new statute, the right of the PIP carrier to subrogation arises only 'in the event of recovery from such tortfeasor by the injured person.' "

The deduction of PIP benefits from uninsured motorist benefits is wholly between the insurance company and its injured insured and does not arise in the aftermath of successful litigation against a third-party, as does the apportionment of attorney fees. The setoff is a part of the contract of insurance between the parties, involving benefits payable under the policy.

Applying the foregoing rules of statutory construction, we must conclude: (1) The setoff provision [K.S.A. 1976 Supp. 40-3113(*e*)] is substantive in nature; (2) there is no language in K.S.A. 1979

Supp. 40-3113a indicating that the repeal of the setoff provision was intended by the legislature to operate retrospectively; and (3) K.S.A. 1979 Supp. 40-3113a must, accordingly, operate prospectively.

The judgment is affirmed in part and reversed in part, and remanded with directions to enter judgment in accordance with this opinion.

PRAGER, J., not participating.