COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-08-383-CV

 

 

RSI INTERNATIONAL, INC.                                                  APPELLANTS

AND
ESSEX INSURANCE 

COMPANY

 

                                                   V.

 

CTC TRANSPORTATION, INC.                                                  APPELLEE

 

                                              ------------

 

           FROM
THE 236TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.  Introduction








Appellants RSI International,
Inc. and Essex Insurance Company appeal the judgment entered after a bench
trial ordering them to pay Appellee CTC Transportation, Inc. $54,604.91 plus
interest and attorney=s fees.  The primary issue that we address is whether
a coinsurance provision in a motor truck cargo liability policy issued by Essex
to CTC is ambiguous.  Because we hold
that, as a matter of law, the coinsurance provision is not ambiguous, we will
reverse the trial court=s judgment
and render judgment that CTC recover only $36,739.49 from Appellants.

II.  Background

CTC specializes in hauling
heavy-duty equipment.  CTC wanted to
insure the equipment it hauled and spoke to Charles Lindamood, an agent with
RSI, about obtaining insurance. 
Lindamood obtained a motor truck cargo liability policy for CTC with
Essex.  Essex issued identical policies
to CTC each year from 2001 through 2005; each policy contained the same
coinsurance provision.  The policy CTC
obtained for coverage from April 28, 2005 to April 28, 2006 (hereinafter this
policy is referred to as Athe policy@ because it is the one at issue) provided for a 1% deductible, a
$500,000 limit of loss, and the same coinsurance provision as CTC=s prior motor cargo liability policies. The coinsurance provisionCwhich will be set forth in its entirety later in this opinionCgenerally provided that Essex would not be liable for a greater
percentage of CTC=s liability
for loss than the limit of the policy to the total value of the cargo at the
time of the loss.  








On November 10, 2005, one of
CTC=s tractors was transporting a large crane.  The value of the crane being transported was
$700,000.  During the transport, the
crane hit a bridge as the tractor passed under the bridge.  The cost to repair the crane was stipulated
to be $61,604.91.  CTC submitted a claim
to Essex under the policy. 

Joel Voelkner of York Claims
Services, Inc. produced a report for Essex calculating CTC=s settlement under the policy as follows:

In review of the load, its
value was $700,000.  In review of the
policy, it maintained a $500,000 limit for cargo.  As such, this would indicate a 71%
co-insurance penalty, which reduces the amount payable from $61,604.91 to
$43,739.49 (a difference of $17,865.42). 
This amount i[s] further reduced by the 1% deductible, which in this
case would be $7,000.  This provides us
with a final settlement figure of $36,739.49. 

After CTC learned of the proposed settlement
amount, CTC=s attorney
wrote a letter to Lindamood and Voelkner stating that the Aco-insurance penalty@ of $17,865.42 was Atotally unacceptable@ to CTC.  CTC indicated that it
would agree to a reduction of Essex=s payment for the $61,604.91 loss only by the $7,000 deductible; CTC
claimed that Essex was required to pay the remaining $54,604.91.  Because the parties could not reach an
agreement on the settlement amount required under the policy, CTC filed suit,
alleging that Appellants had materially breached the terms and conditions of
the insuring agreement.  








After a bench trial, the
trial court entered findings of fact and conclusions of law and signed a final
judgment.  Among its findings, the trial
court found (1) that the 100% coinsurance provision provides in sum or
substance that Essex would not be liable for loss or damage to cargo on any
noninsured vehicle because the word Avehicle@ was not in
bold face type and (2) that Essex=s proposed interpretation of the exclusion would essentially void the
provision providing for the limit of loss. 
In its conclusions of law, the trial court concluded that the A100% Co-Insurance@ provision of the policy Ais unintelligible as written, is vague, confusing and ambiguous@; that Essex failed to provide CTC with the insurance coverage CTC had
purchased; that Essex was liable for CTC=s damage of $61,604.91, less the applicable deductible of $7,000 (1%
of the value of the cargo), for a total award to CTC of $54,604.91;[1]
and that CTC was entitled to recover its reasonable and necessary attorneys= fees in the total sum of $40,000. 
This appeal followed.

III.  The Coinsurance Provision Is Not Ambiguous

In their first issue,
Appellants argue that the trial court erred by finding the coinsurance
provision ambiguous as a matter of law. 
In their other three issues, Appellants challenge the legal and factual
sufficiency of several findings of fact and conclusions of law.  Because Appellants= first issue is dispositive, and in substance encompasses the
remainder of their issues, we will address it first.








A.     Standard of Review

A contract is ambiguous only
if, after the application of established rules of construction, an agreement is
still susceptible to more than one reasonable meaning.  Columbia Gas Transmission Corp. v. New Ulm
Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996).  If a contract is
unambiguous, its terms can be interpreted as a matter of law by the court.  Coker v. Coker, 650 S.W.2d 391, 393
(Tex. 1983).  When an issue turns on a
question of law, we do not give any particular deference to legal conclusions
of the trial court and apply a de novo standard of review.  Trinity Indus., Inc. v. Ashland, Inc.,
53 S.W.3d 852, 868 (Tex. App.CAustin 2001, pet. denied).  

 When an appellate court concludes that
contract language can be given a certain or definite meaning, then the language
is not ambiguous, and the appellate court is obligated to interpret the
contract as a matter of law.  DeWitt
County Elec. Coop., Inc. v. Parks, 1 S.W.3d 96, 100 (Tex. 1999); Loaiza
v. Loaiza, 130 S.W.3d 894, 905 (Tex. App.CFort Worth 2004, no pet.). 
Thus, here, we review de novo the trial court=s conclusion of law that the A100% Co-Insurance@ provision of the policy Ais unintelligible as written, is vague, confusing and ambiguous.@  And if we conclude that it is
not ambiguous, we are obligated to interpret the contract as a matter of
law.  Loaiza, 130 S.W.3d at 905; see
also Upshaw v. Trinity Cos., 842 S.W.2d 631, 633 (Tex. 1992). 








B.     Rules of Construction 

We construe insurance
policies according to the same rules of construction that apply to contracts
generally.  Nat=l Union Fire Ins. Co. of Pittsburgh, PA v. Crocker, 246 S.W.3d 603, 606 (Tex. 2008). 
Enforcing the parties= expressed intent is our primary concern.  See Forbau v. Aetna Life Ins. Co., 876
S.W.2d 132, 133 (Tex. 1994).  Policy
terms are given their ordinary and commonly understood meaning unless the
policy itself shows that the parties intended a different, technical
meaning.  Gonzalez v. Mission Am. Ins.
Co., 795 S.W.2d 734, 736 (Tex. 1990). 
ANo one phrase, sentence, or section [of the policy] should be isolated
from its setting and considered apart from the other provisions.@  Forbau, 876 S.W.2d at
134.

Not every difference in the
interpretation of a contract creates an ambiguity.  See id.  The mere disagreement over the meaning of a
particular provision in a contract does not make it ambiguous.  GTE Mobilnet of S. Tex. Ltd. P=ship v. Telecell Cellular, Inc., 955 S.W.2d
286, 289 n.1 (Tex. App.CHouston [1st
Dist.] 1997, writ denied).  In order for
an ambiguity to exist when the parties advance conflicting
interpretations, both interpretations must be reasonable.  See Columbia Gas Transmission Corp.,
940 S.W.2d at 589.

C.     The Policy=s Provisions








The insurance policy that
Essex issued to CTC contained the following provisions:

IV.    LIMIT OF LOSS $500,000.00 (As defined in
Insuring Agreement)

V.     Deductible (per paragraph 5) $1% of
value of load but not less than $1,000.00 any one occurrence.  Refrigeration Breakdown Deductible $N/A

 

. . . .

 

INSURING
AGREEMENTS

 

. . . .

 

Limit of Loss.  This Company will be liable for the least of
the following:

Actual
cash value of cargo at the point of shipment on the date of loss;

The
Insured=s
legal liability under the bill of lading or shipping receipt;

The cost to repair;

but
in no event for more than the indicated Limit of Liability shown in the
Declarations for each vehicle or terminal and not to exceed the Limit of Loss
shown in the Declarations for any claims arising out of any one loss involving
(1) two or more vehicles; (2) one or more terminals and one or
more vehicles; (3) any other combination or circumstance.

100%
Coinsurance.  The Company shall in no event be liable under the policy with respect
to the insured=s liability
for loss or damage to cargo on any vehicle or at any terminal described in the
Declarations for a greater percentage of any loss or damage than the respective
limit(s) applicable under this Policy bears to the total value of the cargo on
the vehicle or at the terminal at the time of the loss or damage,
whether damaged or not. 

D.     The Parties= Arguments








Appellants argue that the
coinsurance clause was not ambiguous as a matter of law.  Specifically, Appellants argue that the trial
court totally disregarded and Awrote out of the [p]olicy the coinsurance language@ instead of construing it in light of the policy=s limit of loss section. 
Appellants state that in looking at the AInsuring Agreement@ for the definition of ALimit of Loss,@ there is
nothing ambiguous about how to determine the limit of loss; it is simply the
least of the three possible amounts, which in this case was the $61,604.91 cost
to repair the crane.  Then, because under
the coinsurance provision Essex is not responsible Afor a greater percentage of any loss or damage than the respective
limit(s) applicable under this [p]olicy bears to the total value of the cargo,@ the $500,000 applicable limit is divided by the $700,000 total value
of the cargo (the crane) that CTC was carrying at the time of the accident to
obtain Essex=s liability
for the loss, which comes to 71%.  After
adjusting the $61,604.91 by 71%, then the $7,000 deductible is subtracted
because the policy states that Essex Ashall have no obligation under this form until the claim exceeds the
deductible@ and
provides that one must apply the deductible to Aeach adjusted claim.@  Appellants= calculation produces a figure of $36,739.49 and tracks with the
calculation that Voelkner used. 








CTC, on the other hand,
argues that ambiguity exists on the face of the policy not only because the
parties disagree on its interpretation but because, according to CTC, the
policy is not susceptible to any reasonable interpretation.  CTC asserts two arguments in support of the
position that the policy, specifically the coinsurance provision, is not
susceptible to any reasonable interpretation.








First, CTC claims no
reasonable interpretation is possible because the coinsurance provision uses
the term Avehicle@ and the term Avehicle.@  CTC argues that Avehicle@ necessarily
refers to an uninsured vehicle because Avehicle@ is a defined term in the policy.[2]  AVehicle@ is defined
in the ADEFINITIONS@ section of
the policy as A[a] power
unit specifically scheduled on the Declarations and any trailer while
physically attached to the power unit, or a detached trailer specifically
scheduled on the Declarations.  If
blanket coverage is provided, vehicle shall include all power units and
trailers attached or otherwise operated by the insured.@  CTC argues that because the
term Avehicle@ is a
defined term, it cannot be used interchangeably with Avehicle.@  And, according to CTC, construing the term Avehicle@ in the
coinsurance provision to mean an uninsured vehicle and giving the term Avehicle@ in the
coinsurance provision its defined meaning, the coinsurance provision is
unintelligible, vague, confusing, and ambiguous, as determined by the trial
court.

Second, CTC points to two
alleged conflicts between the application for insurance completed by Lindamood
and the policy issued.  Specifically, CTC
contends that the Amaximum
exposure per vehicle@ of $500,000
Lindamood wrote on the application is synonymous with the $500,000 limit of
loss in the policy but is Adiametrically opposed to the >max value= of the
commodity from the application and its inclusion in the 100% coinsurance
provision.@  Thus, in arguing that the policy is subject
to no reasonable interpretation, CTC points to alleged disparities between its
application for insurance and the actual insurance policy.   

E.     Analysis








The starting point of our
analysis is the instrument itself.  See
Coker, 650 S.W.2d at 393 (AIf the written instrument is so worded that it can be given a certain
or definite legal meaning or interpretation, then it is not ambiguous and the
court will construe the contract as a matter of law.@).  Applying the rules of
construction to the instrument itself, we must construe the insurance policy to
give effect to all of the policy=s terms so that none will be rendered meaningless.  Id. at 393.  CTC=s construction of the policy to distinguish between the terms Avehicle@ and Avehicle@ in the coinsurance
provision is unreasonable because it renders the entire coinsurance provision
meaningless; CTC essentially concedes this point by claiming that the
coinsurance provision (as interpreted by CTC) is unintelligible as written,
vague, confusing, and ambiguous.  See
Fisher v. N. Am. Life & Cas. Co., No. 05-93-01723-CV, 1995 WL 45640, at
*4 (Tex. App.CDallas Jan.
31, 1995, no writ) (not designated for publication) (holding that A[t]o adopt [insured=s] interpretation would be to render this general limitation provision
meaningless@).  Moreover, CTC=s construction is not supported by the plain language of the
coinsurance provision itself because that provision provides that it applies to
Aany vehicle . . . described in the Declarations@[3] when the total value of the cargo exceeds the $500,000 policy limit.








Giving the terms of the
coinsurance provision their plain meanings, construing the coinsurance
provision so as to harmonize it with the entire motor truck cargo liability
policy, and giving effect to each clause of the policy, the coinsurance
provision is subject to only one reasonable interpretation and that is the
interpretation urged by Appellants. 
Accordingly we hold that the coinsurance provision is not ambiguous as a
matter of law.  See Loaiza, 130
S.W.3d at 905 (AA contract
is ambiguous only if, after the application of established rules of construction,
an agreement is still susceptible to more than one reasonable meaning@) (citing DeWitt County Elec. Coop., Inc., 1 S.W.3d at 100; Columbia
Gas Transmission Corp., 940 S.W.2d at 589); Yancey v. Floyd W. & Co.,
755 S.W.2d 914, 920 (Tex. App.CFort Worth 1988, writ denied) (holding that because there was only one
reasonable construction of the language in the policies, no ambiguity existed
within the policies at issue).  Accordingly,
we construe the policy as a matter of law; the policy mandates the calculations
propounded by Appellants.








Based on this holding, we
cannot agree with CTC=s contention
that we may rely on testimony of the contracting parties= intent in construing the policy or that the language in the
application for insurance may conflict with, and create ambiguity in, the
policy.  Cf. Rutherford v. Randal,
593 S.W.2d 949, 953 (Tex. 1980) (AThe absence of an ambiguity in the deed negates all justification for
the consideration of extrinsic evidence concerning the original intent of the
grantor . . . .  Under these
circumstances, this court will limit its search for the grantor=s intent to that intent which was expressed within the four corners of
the deed.@).  CTC=s subjective belief as to what the contracting parties intended to be
covered under the policy limits is immaterial, insofar as such intentions are
not found in, and in fact add to, the plain language of the policy itself.  See Koelsch v. Indus. Gas Supply Corp.,
132 S.W.3d 494, 498 (Tex. App.CHouston [1st Dist.] 2004, pet. denied); see also Gary E. Patterson
& Assocs., P.C. v. Holub, No. 01‑04‑00108‑CV, 2008 WL
100233, at *11 (Tex. App.CHouston [1st
Dist.] Jan. 10, 2008, pet. denied) (providing that A>[u]nder the parol evidence rule, . . . all prior negotiations and
agreements with regard to the same subject matter are excluded from
consideration=A and that A>a written instrument presumes that all prior agreements relating to
the transaction have been merged into it and will be enforced as written and
cannot be added to, varied, or contradicted by parol testimony=@).  We sustain Appellants= first issue.








Because we have sustained
Appellants= first issue
claiming that the coinsurance provision is unambiguous as a matter of law, we
likewise  sustain Appellants= third and fourth issues[4]
challenging the trial court=s contrary conclusions of law, including conclusion of law number 7
that awarded attorney=s fees to
CTC for breach of contract.  See
Newton v. Meade, 143 S.W.3d 571, 575 (Tex. App.CDallas 2004, no pet.) (holding that when no breach of contract claim
is established, party may not recover attorney=s fees under Texas Civil Practice and Remedies Code section
38.001(8)).  We reverse the trial court=s judgment and render judgment pursuant to the unambiguous provisions
of the policy that CTC recover only $36,739.49 from Appellants and that CTC
take nothing on its claim for attorneys= fees.

IV.  Conclusion

Having sustained Appellants= issues that are necessary for disposition of the appeal, we reverse
the trial court=s judgment
and render judgment that CTC recover only $36,739.49 from Appellants and that
CTC take nothing on its claim for attorneys= fees.

 

SUE WALKER

JUSTICE

 

PANEL:
LIVINGSTON, WALKER, and MEIER, JJ.

 

DELIVERED:  June 18, 2009











[1]The
trial court concluded that CTC=s policy provided Ainsurance
coverage for the first $500,000 of any damage, less the applicable deductible.@ 





[2]As
set forth above in the coinsurance provision, when that provision uses the
unbolded term Avehicle,@ it
is modified by Adescribed
in the Declarations,@
indicating that at least the coinsurance provision=s use
of the unbolded term@vehicle@
referred to a vehicle identified on the declarations page as a covered vehicle
not, as CTC argues, an uninsured vehicle.





[3]And
though not clearly readable on the AAutomobile Loss Notice,@ it
appears that the vehicle involved in the accident was a 2001 Kenworth tractor
with an identification number that looks remarkably similar to A057031.@  This would match the one and only 2001
Kenworth tractor shown on the Declarations page of the policy, which lists the Avehicles@
covered by the policy.





[4]We
need not reach Appellants=
second issue because the challenged finding of fact relates to the ambiguity of
the insurance provision and has no legal significance in light of our holding
that the provision is unambiguous as a matter of law.