780 P.2d 142

**NATIONWIDE MUTUAL INSURANCE COMPANY, an Ohio corporation, Plaintiff–Respondent,**

v.

**Mark SCARLETT, individually and as next friend of Angela Scarlett; Gary O. Scarlett, individually and as next friend of Danielle Scarlett and Desiree Scarlett, Defendants–Appellants.**

No. 17441.

Supreme Court of Idaho.

July 24, 1989.

Rehearing Denied Oct. 19, 1989.*

Davison, Copple, Copple & Copple, Boise, for defendants-appellants. E. Don Copple argued, Boise.

Hawley, Troxell, Ennis & Hawley, Boise, for plaintiff-respondent. John F. Kurtz, Jr., argued, Boise.

BAKES, Chief Justice.

This is a declaratory judgment action under the uninsured/underinsured motorist provision of an automobile insurance policy. The facts relevant to the insurance claim are undisputed. On May 8, 1986, the insured, Gary O. Scarlett (Scarlett) purchased from Nationwide Mutual Insurance Company (Nationwide) an automobile insurance policy insuring four specified vehicles. Scarlett's policy provided uninsured/underinsured motorist coverage for each of the four vehicles in the amount of $100,000 per person, $300,000 per occurrence. On July 8, 1986, Scarlett's two daughters, Desiree and Danielle, and his niece, Angela Scarlett, were involved in a traffic accident while in one of the vehicles covered under Scarlett's policy. Desiree was driving, with Angela and Danielle as passengers. An automobile driven by Robin Jo Darrell (Darrell) crossed the center line and collided head on with the Scarlett vehicle. All three of the Scarlett girls suffered serious injuries as a result of the collision. A passenger in the Darrell vehicle was killed in the accident.

Shortly thereafter, litigation was initiated on behalf of the Scarlett girls against Darrell. Darrell carried automobile liability insurance through Continental Insurance Company (Continental) with the same $100,000/$300,000 limits as those contained in Scarlett's policy with Nationwide. Pursuant to a settlement agreement, Continental paid the full policy limits, $300,000, which was paid as follows: $150,000 to Angela Scarlett, $50,000 each to Danielle and Desiree Scarlett, and $50,000 to the

*Dissenting opinion on denial of rehearing will be published.

estate of the passenger in the Darrell vehicle.

The Scarletts then made a claim against Nationwide under the uninsured/underinsured provision of its policy insuring the Scarlett automobile. Nationwide denied coverage and brought an action in the district court for a declaratory judgment. The Scarletts filed a motion for partial summary judgment; Nationwide then filed a cross motion for summary judgment on the theory that Darrell's vehicle was not "underinsured" as defined in the Nationwide policy. In a declaratory judgment, the district court ruled that the Darrell motor vehicle was not an underinsured motor vehicle as defined in the Nationwide policy, and accordingly, Nationwide's motion for summary judgment was granted. The Scarletts appeal. We affirm.

■ The threshold issue before this Court is whether the uninsured/underinsured motorist coverage on Scarlett's four vehicles may be aggregated, or "stacked," for the purpose of determining whether Darrell was underinsured. Under the Nationwide policy, a motor vehicle is "underinsured" if the amount of liability insurance on the negligent party's vehicle is less than the limits of Nationwide's uninsured/underinsured motorist coverage. Nationwide's Endorsement 1603, which provided the underinsured coverage, amended the uninsured motorist coverage to include the following:

1. An uninsured motor vehicle includes an underinsured motor vehicle. This is one for which there are bodily injury liability coverage or bonds in effect. Their total amount, however, is less than the limits of this coverage. These limits are shown in your policy's Declarations.

Thus, in order for the Scarletts to receive benefits from the Nationwide underinsured motorist coverage, the limit of liability on Darrell's policy had to be less than the limit on Scarlett's uninsured/underinsured motorist coverage. Although the limits of Darrell's liability coverage was $100,000 per individual and $300,000 per occurrence, the same as Scarlett's uninsured/underinsured motorist coverage, Scarlett nevertheless contends that because four vehicles were insured under his Nationwide policy he should be able to quadruple those limits; i.e., Nationwide was effectively committed to $400,000 per individual and $1.2 million per occurrence. Accordingly, Scarlett argues, since the limits of the Darrell policy ($100,000/$300,000) are less than the four-car combined limits of his own coverage ($400,000/$1.2 million), he is entitled to uninsured/underinsured motorist coverage under his own Nationwide policy. However, the following excerpt from the Nationwide policy expressly rejects Scarlett's claim. The Limits of Payment provision of the Nationwide policy provides:

LIMITS OF PAYMENT.

. . . .

2. Limits apply as stated in the Declarations. *The insuring of more than one person or vehicle under this policy does not increase our Uninsured Motorists payment limits. In no event will any insured be entitled to more than the highest limit applicable to any one motor vehicle under this policy.* (Emphasis added.)

The foregoing policy language is plain and unambiguous and clearly provides that merely because more than one vehicle is insured under the policy, that fact "does not increase our Uninsured Motorists Payment limits. In no event will any insured be entitled to more than the highest limit applicable to any one motor vehicle under this policy." That provision clearly prevents Scarlett from combining ("stacking") the coverages for each of the motor vehicles. The Nationwide policy limits the uninsured/underinsured coverage to "the highest limit applicable to any one motor vehicle," which is $100,000/$300,000, and which was the same amount of coverage the tortfeasor Darrell had in its liability coverage. Accordingly, under Nationwide's Endorsement 1603, attached to the Scarlett policy, the Darrell vehicle was not underinsured because the Darrell liability coverage was not "less than the limits of this coverage."

Scarlett argues, nevertheless, that the limits of payment clause is ineffective and

unenforceable because it is against public policy. However, this Court has on two recent occasions ruled to the contrary. In *Blackburn v. State Farm Mutual Auto. Ins. Co.*, 108 Idaho 85, 697 P.2d 425 (1985), this Court traced the development of Idaho's uninsured motorist statute and held that the legislative mandate that insurers offer "uninsured" motorist coverage did not require that insurers offer "underinsured" motorist coverage, and therefore such "underinsured" motorist coverage was controlled entirely by the contractual obligations in the insurance policy itself. In *Meckert v. Transamerica Ins. Co.*, 108 Idaho 597, 701 P.2d 217 (1985), this Court rejected the argument that limitations on underinsured motorist coverage violates some public policy set out in the Idaho insurance statutes. The Court stated:

> [T]he Idaho statutes do not regulate *underinsured* motorist coverage. There are no requirements that insurance carriers offer such *underinsured* motorist coverage, nor that motorists have such *underinsured* coverage. Neither the Idaho legislature nor the courts have declared that there exists a public policy applicable to *underinsured* motorist coverage. While such a policy might be desirable [citations omitted], that public policy should be enunciated by our legislature and not by this Court. (Emphasis in original.)

108 Idaho at 600, 701 P.2d at 220. Accordingly, we conclude that there is no merit to Scarlett's claim that the coverage on his several vehicles insured under the Nationwide policy can be "stacked," or that the limitation on stacking violates some public policy in this state.

■ Finally, it is argued that since $50,000 of the tortfeasor Darrell's liability insurance was paid to the estate of the passenger in the Darrell vehicle, only $250,000 was available for payment to the Scarletts, and to that extent the tortfeasor Darrell was underinsured within the meaning of the underinsured provision of Scarlett's Nationwide policy, and therefore Scarlett has at least a $50,000 claim under the Nationwide policy. However, as earlier pointed out, the definition of an "underinsured"

motorist does not refer to how much is available to satisfy Scarlett's claims where there are multiple claimants to the tortfeasor's liability policy. Endorsement 1603 defines an underinsured motor vehicle as one in which the limits of the tortfeasor's liability policy are "less than the limits of this coverage" (the Nationwide uninsured/underinsured policy). The record establishes that the tortfeasor Darrell's liability coverage was identical to the Scarlett's uninsured/underinsured coverage, *i.e.,* $100,000 per individual and $300,000 per occurrence. Accordingly, since the tortfeasor's liability coverage was not "less than the limits of this [Nationwide uninsured/underinsured] coverage," Darrell's vehicle was not "an underinsured motor vehicle" within the meaning of the Nationwide policy. The fact that the Scarletts did not obtain the benefit of the entire $300,000 because $50,000 was apportioned to the estate of the deceased passenger in the Darrell vehicle does not make the Darrell vehicle "underinsured" as defined in the Nationwide policy.

The summary judgment of the district court is affirmed. Costs to respondent. No attorney fees awarded.

JOHNSON, J., and McFADDEN, J. Pro Tem., concur.

HUNTLEY, Justice, dissenting.

I respectfully disagree with the majority's treatment of the second and final issue on appeal which is:

> Whether the amount of underinsured motorist coverage extended to the occupants of the Scarlett car may be reduced by the $50,000 paid to the occupant of the other vehicle involved in the collision.

In endorsement 1603 of the Nationwide policy, Nationwide includes "underinsured motor vehicles" in its definition of uninsured vehicles. Endorsement 1603 reads:

> 1. An uninsured motor vehicle includes an underinsured motor vehicle. This is one for which there are bodily injury liability coverages or bonds in effect. Their total amount, however, is less than

the limits of this coverage. These limits are shown in your policy's declarations.

Thus, by contract, Nationwide has made its *underinsured coverage* subject to the same "extra policy" (i.e. statutory) constraints and requirements as flow with its *un*insured coverage.

The basic theory of uninsured motorist coverage "is that uninsured motorist coverage is meant to compensate the plaintiff for a deficiency in the tortfeasor's personal liability insurance coverage." *Dewberry v. Auto–Owner's Insurance Co.,* 363 So.2d 1077, 1081 (Fla.1978). The decision in *State Farm Mutual Auto. Insurance Co. v. Diem,* 358 So.2d 39, 40 (Fla.App.1978) is consistent with this rationale. The court stated:

> We hold that the maximum uninsured motorist coverage available to the insured under such circumstances [where a driver is hit by an uninsured motorist] is the uninsured motorist policy limits less the maximum benefits available to the insured under the automobile liability insurance policy of the underinsured motorist.

In *Diem,* the plaintiff had underinsured motorist coverage with State Farm of $15,000/$30,000. The tortfeasor had $20,000 of coverage of which $4,000 was paid to Diem and $16,000 to other parties. The court ruled that State Farm would be required to pay all of Diem's damages up to the $15,000/$30,000 limit, less only the $4,000 the tortfeasors insurance paid to Diem.

Thus, State Farm's argument that the tortfeasor was not underinsured because it had more than $15,000 of coverage, i.e., $20,000, was rejected, the court holding that the number to utilize in determining whether the tortfeasor is underinsured is the amount awarded to the policyholder.

*Diem* was decided under a Florida statute which specifically defined uninsured motorist coverage in terms of *benefits available* to the insured and the court stated:

> Contrary to State Farm's position herein, available benefits under the statute does not constitute the policy limits of the underinsured's liability policy where, as here, the benefits under such policy have been partially exhausted by payment of claims to persons other than the insured. *Lee v. State Farm Mutual Automobile Insurance Co.,* 339 So.2d 670 (Fla.2d DCA 1976). Available benefits must mean that which is actually available to the insured herein from the underinsured's liability carrier.

Idaho's statutory scheme is similar in that I.C. § 41–2502 together with I.C. § 49–1505 require that there be not less than $25,000 per person and $50,000 per accident *for the protection of persons insured thereunder,* those persons being the Scarletts and not parties who are not insured under the Scarlett policy.

The district court erred in offsetting Nationwide's underinsured coverage by the $50,000 of liability insurance paid by the tortfeasor's insurer to a separate victim of the accident.

Nationwide charged and received of Scarlett a premium to provide underinsured coverage to Scarlett. Scarlett did not provide a premium to provide coverage for the Milton Olander family (passenger in the car driven by the other driver).

The next and logical result which must flow from Justice Bakes' line of reasoning, is that if the whole $300,000 had been paid over to the Milton Olander heirs, the Scarlett family would have gotten zero for their premium.

Would that my colleagues would depart from the realm of word games and return to a few of the rules we follow when convenient, i.e.:

Rule 1: Ambiguous policy is construed against maker.

Rule 2: Give meaning to all words in contract if possible.

Rule 3: Where a contract or insurance policy is impressed with a statute by operation of law, the statute must be considered a part of the document and given effect.

Justice Bakes treats this issue in one long paragraph—the reader will please go back and reread it and see if he ever refer-

ences the statute (I.C. § 41–2505) or explains away its words: "for the protection of persons insured thereunder ..."

Today this Court protects only Nationwide in its ability to collect premiums without liability to pay benefits. No one can accuse this Court of being anti FREE enterprise.

BISTLINE, J., concurs.