788 P.2d 1317

## NATIONWIDE MUTUAL INSURANCE COMPANY, an Ohio corporation, Plaintiff–Respondent,

v.

## Mark SCARLETT, individually and as next friend of Angela Scarlett; Gary O. Scarlett, individually and as next friend of Danielle Scarlett and Desiree Scarlett, Defendants–Appellants.

### No. 17441.

Supreme Court of Idaho.

Oct. 19, 1989.

## ORDER DENYING PETITION FOR REHEARING

The Appellants having filed a PETITION FOR REHEARING on August 11, 1989, and supporting BRIEF on August 25, 1989, of the Court's Opinion entered July 24, 1989, 116 Idaho 820, 780 P.2d 142; therefore, after due consideration,

IT IS HEREBY ORDERED that Appellants' PETITION FOR REHEARING be, and hereby is, DENIED and the dissent on Denial of the Petition for Rehearing by Bistline, J., be, and hereby is, RELEASED.

ON DENIAL OF APPELLANTS'
PETITION FOR REHEARING

BISTLINE, Justice.

As was to be expected, the insureds, namely the three seriously injured Scarlett girls, and Gary Scarlett, the purchaser of Nationwide's policy of liability insurance on four vehicles plus underinsured/uninsured motorist coverage in the amounts of $100,-000 per person and $300,000 per occurrence, have petitioned this Court for a rehearing so that the very important issue this Court decided against them may be reconsidered.

This Court's 3–2 decision went against the Scarletts by the slim margin of only one vote. Justice McFadden (Ret.), sitting for Chief Justice Shepard, and Justice Johnson joined in an opinion authored by Justice Bakes. The majority opinion relied primarily on *Meckert v. Transamerica Ins. Co.*, 108 Idaho 597, 701 P.2d 217 (1985) (116 Idaho 820, 821–22, 780 P.2d 142, 143–44 1989) for the proposition that the state of Idaho supposedly has no *declared* public policy applicable to underinsured motorist coverage. After announcing this thin excuse, if such it amounted to, the majority conceded "that such a public policy might be desireable," but feebly explained "that public policy should be enunciated by our legislature and not by this Court."

Earlier in its opinion, the majority explained that "[t]here are no requirements that insurance carriers offer such *underinsured* motorist coverage, nor that motorists have such *underinsured* coverage." From this vantage point, the majority was prepared to recognize its "holding that a statute governing uninsured motorist coverage does not represent any public policy regarding underinsured motorist coverage." *Meckert*, 108 Idaho at 600, 701 P.2d at 220.

I believed the majority's opinion was wrong then—now four years ago—and today I view it as a travesty. The mere fact that the legislature had come to the recognition that there was a need for uninsured motorist coverage was a clear and convincing expression of legislative policy sufficient to allow a reasonably enlightened court to take the one small step beyond that guidance, and include underinsured motorist coverage. Not one member of the majority responded in any manner to this language in my dissent in *Meckert:*

All parties here involved concede that I.C. § 41–2502 invalidates clauses such as the one involved in this case with respect to *uninsured* tort-feasors. That statute requires insurance policies to provide protection to the insured from injury by uninsured drivers. The policy reasons are manifestly apparent: innocent victims need to be protected from irresponsible drivers who cannot indemnify such victims for the harm their conduct causes. Why, then, does this Court make the difference between *underinsured* and *uninsured* tort-feasors *vis a vis* the insured-victim's ability to be reimbursed for the harm suffered? No reason is readily apparent; the distinction made by the Court is without a difference.

As far as the innocent victim is concerned, *it matters little* whether the tort-feasor has no insurance or merely inadequate insurance, for in either event the result is that the victim is going to have to shoulder alone a large or complete burden for the harm suffered. For *public policy reasons* I.C. § 41–2502 was enacted to remedy that wrong with respect to *uninsured* motorists. Only a myopic court can ignore the fact that the *same* public policies underlying § 41–2502 also support prohibiting enforcement of exclusionary clauses involving tort-feasors who have some but not enough insurance coverage. The fact that the legislature has not spoken explicitly as to *underinsured* coverage is of little consequence; the *exact* reasons upon which the legislature enacted I.C. § 41–2502 apply to underinsured issues as well.

The issue before us needs to be kept well in mind—it is *not* whether underinsured coverage must be provided to insured people in the State of Idaho; rather, it is whether an exclusionary insurance clause, concededly invalid as to uninsured tort-feasors, is also invalid as

to underinsured tort-feasors. Only one reasonable conclusion is possible, and that conclusion is a resounding 'yes.'

*Meckert,* 108 Idaho at 601–602, 701 P.2d at 121 (emphasis in original).

I conclude with an excerpt from the brief filed in support of the petition for rehearing, which makes a strong point indeed by reminding the majority that this Court has not always been so self-emasculating:

## II. ANTI–STACKING PROVISIONS

This same majority has continued to ignore that the following states have been enlightened and held anti-stacking provisions against public policy: Washington, Oklahoma, Kansas, Missouri, Montana, Nevada, Hawaii, Alabama, Alaska, Connecticut, Delaware, Indiana, Louisiana, Maryland, Minnesota, Mississippi, Rhode Island, South Carolina and Texas. Appellant's Brief filed in the Appeal in this matter sets forth cases and rationale contained therein from each of these jurisdictions.

The majority has cited *Blackburn v. State Farm Mutual Auto Insurance Company,* 108 Idaho 85, 697 P.2d 425 (1985), to determine that it would be a clear indulgence in judicial legislation under the guise of statutory interpretation to extend the uninsured rationale to the underinsured reasoning. Again we query, was it judicial legislation when this Court abrogated the doctrine of sovereign immunity, held that attorneys' fees could be awarded the condemnee in an eminent domain case, adopted strict liability in tort or adopted the most significant relationship for determining applicable law in conflict situations? The injured individuals should be permitted to stack their coverages. They purchased four uninsured/underinsured coverages and paid additional premiums therefor. Justice Huntley appropriately states: "Today this Court protects only (the insurer) in its ability to collect premiums without liability to pay benefits."