Amy UPSHAW and Greg Upshaw, Individually and as Independent Executor of the Estate of George Upshaw, Petitioners,

v.

The TRINITY COMPANIES, Respondents.

No. D–1451.

Supreme Court of Texas.

Sept. 30, 1992.

Rehearing Overruled Dec. 9, 1992.

**3.** *See* TEX.R.CIV.P. 277 and 278.

**632**

Thomas C. Hall, San Antonio, for petitioners.

William J. Gamble, San Antonio, for respondents.

OPINION

CORNYN, Justice.

We consider in this appeal whether stacking[1] of policy limits for underinsured motorist coverage in a single multi-vehicle insurance policy should be compelled, first, because of alleged ambiguities in a standard Texas Personal Auto Policy, and second, because the contractual limitation on the insurer's liability under these circumstances violates public policy. Because the stacking prohibition contained in the policy is neither ambiguous nor violative of public policy, we affirm the judgment of the court of appeals.

I.

On June 25, 1989, George Upshaw was killed when his car collided with a vehicle owned by Brett Field and driven by John Pleasant. At the time of the accident, Upshaw had a single multi-vehicle insurance policy issued by the Trinity Companies ("Trinity") covering three automobiles. Under the terms of the policy, Upshaw paid three separate premiums for uninsured/underinsured motorist coverage, one for each car. Coverage under the policy for uninsured/underinsured motorist protection is limited to $20,000 per person and $40,000 per accident. Following Upshaw's fatal accident, his surviving son and daughter ("the Upshaws") sued Field and Pleasant for negligence and Trinity under its policy. The Upshaws' claims against Trinity were subsequently severed from those against Field and Pleasant. At some point, the Upshaws rejected a tender by Trinity of $20,000, which Trinity claimed discharged its liability for uninsured/underinsured motorist coverages under the policy.

In their suit, the Upshaws seek a declaration that the uninsured/underinsured provisions of the policy can be stacked to allow a maximum recovery of $40,000, arguing that the separate premiums paid on each vehicle entitled them to such coverage.

---

**1.** "Stacking" is the aggregation of multiple insurance coverages to cover the insured's loss. Intrapolicy stacking is the cumulation of the liability limits for multiple vehicles under a single policy, whereas interpolicy stacking is the cumulation of coverages under more than one policy. *See United Serv. Auto. Ass'n v. Hestilow,* 754 S.W.2d 754, 755 n. 1 (Tex.App.—San Antonio 1988), *aff'd,* 777 S.W.2d 378 (Tex.1989).

The trial court rendered judgment for Trinity, holding that the underinsured motorist coverage for the multiple vehicles insured under the policy could not be stacked, and the court of appeals affirmed. 812 S.W.2d 353.

The Upshaws contend that the policy is ambiguous and, as such, should be construed to maximize coverage. Alternatively, they argue that public policy considerations require the intrapolicy stacking of underinsured motorist coverage.

## II.

■ In addressing the Upshaws' claim of ambiguity, we turn to our recent writing on this subject in *National Union Fire Insurance Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex.1991), stating that:

> Generally, a contract of insurance is subject to the same rules of construction as other contracts. *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987). If the written instrument is worded so that it can be given only one construction, it will be enforced as written. *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex.1984).

We may not resort to rules of contract construction if the policy is unambiguous, that is, if it is susceptible of only one reasonable interpretation. *Barnett*, 723 S.W.2d at 665.

■ Part C of the policy, entitled "UNINSURED/UNDERINSURED MOTORISTS COVERAGE," under "Limit of Liability," provides:

> [i]f separate limits of liability for bodily injury and property damage liability are shown in the Declarations for this coverage *the limit of liability for "each person" for bodily injury liability is our maximum limit of liability for all damages for bodily injury sustained by any one person in any one accident.* Subject to this limit for "each person", the limit of liability shown in the Declara-

tions for "each accident" for bodily injury liability is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident. (emphasis added).

We hold that this language is certain and not reasonably susceptible to more than one interpretation. The contract provides that for any one person the limits of coverage are $20,000 per accident. It also limits the total recovery, when more than one person suffers a loss in a single accident, to $40,000. Thus, we hold that the policy unambiguously limits coverage to prohibit intrapolicy stacking.[2]

This holding is consistent with prior Texas caselaw recognizing that payment of supplementary premiums for coverage of an additional vehicle by itself does not require intrapolicy stacking. *See Hartford Acc. and Indem. Co. v. Turner*, 512 S.W.2d 687, 688 (Tex.1974); *Westchester Fire Ins. Co. v. Tucker*, 512 S.W.2d 679, 684 (Tex.1974); *American Liberty Ins. Co. v. Ranzau*, 481 S.W.2d 793, 797–98 (Tex. 1972). In *Westchester Fire Insurance Co.*, when faced with the same contentions that the Upshaws urge here, we held that "the stated limits of the uninsured motorist coverage are not subject to stacking or pyramiding." 512 S.W.2d at 684. There, the insured's policy covered two vehicles with limits for uninsured motorist coverage of $10,000 per accident and $20,000 per occurrence. The insured paid a premium of $4.00 for the coverage on his first car and $3.00 for his second car. When the insured suffered a $15,000 loss as a result of injuries in an accident with an uninsured motorist, he sought to stack the uninsured motorist coverage for the two vehicles insured under the policy. Just as in this case, the insured was driving one of his own cars when the injury occurred.

In declining to adopt a construction of the policy that would require stacking of intrapolicy coverages, we held that the underinsured motorist coverage limits were

---

**2.** The Upshaws contend that the policy's language conflicts with the statutory definition of underinsured motor vehicle provided by Tex. Ins.Code art. 5.06–1(2)(b). They argue that the statute contemplates only one limit of liability

coverage, whereas Upshaw's policy provides separate limits of coverage for bodily injury and property damage. We disagree. The provisions of this policy merely track the language of the statute that mandates such coverages.

controlled by the limit of liability stated in the policy. *Id.* As part of our rationale, we stated: "it is clear that the additional charge was not made for the purpose of increasing the policy limits." *Id.* We reached this conclusion on the basis that the payment of the additional premium expanded the uninsured motorist coverage to include additional-owned vehicles. *Id.* at 684–85. Such coverage, under a family policy like that purchased by Upshaw, covers more than one person. Additional covered cars, occupied concurrently by additional insureds, means an increased risk of loss for which the insurer is entitled to additional premium. *See, e.g., Ranzau,* 481 S.W.2d at 798; *Holyfield v. Members Mut. Ins. Co.,* 566 S.W.2d 28, 29 (Tex.Civ.App.— Dallas 1978), *writ ref'd n.r.e. per curiam,* 572 S.W.2d 672, 673 (Tex.1978).

■ Our holding today is also consistent with those of other states, whose courts have also recognized that the additional payment of premiums alone does not result in stacking. *See Nationwide Mut. Ins. Co. v. Scarlett,* 116 Idaho 820, 780 P.2d 142, 143 (1989); *Hillman v. Nationwide Mut. Fire Ins. Co.,* 758 P.2d 1248, 1254–55 (Alaska 1988); *LeCuyer v. Metropolitan Property & Liab. Ins. Co.,* 401 Mass. 709, 519 N.E.2d 263, 265 (1988); *Sanders v. St. Paul Mercury Ins. Co.,* 148 Vt. 496, 536 A.2d 914, 921 (1987); *Charley v. Farmers Mut. Ins. Co.,* 219 Neb. 765, 366 N.W.2d 417, 422 (1985); *Dufour v. Metropolitan Property & Liab. Ins. Co.,* 438 A.2d 1290, 1293 (Me.1982); *Hampton v. Allstate Ins. Co.,* 126 Ariz. 403, 616 P.2d 78, 80–81 (1980, review denied); Janet Boeth Jones, Annotation, *Combining or "Stacking" Uninsured Motorist Coverages Provided in Single Policy Applicable to Different Vehicles of Individual Insured,* 23 A.L.R.4th 12, 21–22 (1983 & Supp.1991) (section 3(a) lists states which allow stacking and section 3(b) lists states where "payment of multiple premiums was *not determinative* of an insured's right to multiple uninsured motorist coverages in a policy covering more than one vehicle;" neither list appears to be exhaustive). Where, as here, no ambiguity exists as to the extent of coverage, the additional premium payments are presumed to have been intended to provide coverage only for additional persons or use of other vehicles by the person already insured.

### III.

■ The Upshaws also contend that public policy mandates the intrapolicy stacking of limits because additional premiums were charged and paid for underinsured motorist coverage for each vehicle listed on the policy. The Upshaws argue that coverage for additional vehicles did not increase the insurer's risk and that the additional premiums should be deemed to afford the insured a right to stack coverage.

Article 5.06–1 of the Insurance Code, entitled "Uninsured or Underinsured Motorist Coverage," which mandates the minimum coverages of automobile liability insurance policies in this state, provides in pertinent part:

> The portion of a policy form adopted under Article 5.06 of this code to provide coverage under this article [uninsured or underinsured motorist coverage] shall include provisions that, *regardless of the number of persons insured, policies or bonds applicable, vehicles involved, or claims made, the total aggregate limit of liability to any one person who sustains bodily injury or property damage as the result of any one occurrence shall not exceed the limit of liability for these coverages as stated in the policy* . . . .

Tex.Ins.Code art. 5.06–1(2)(d) (emphasis added). When first enacted in 1967, article 5.06–1 required insurers to offer, subject only to written refusal by the insured, *uninsured* motorist coverage in standard automobile insurance policies. Act of Oct. 1, 1967, 60th Leg., R.S., ch. 202, § 3, 1967 Tex.Gen.Laws 448, 449. In 1977 the legislature amended the statute to require, for the first time, that insurance carriers likewise offer *underinsured* motorist coverage in standard personal automobile policies. Act of Aug. 29, 1977, 65th Leg., R.S., ch. 182, § 1, 1977 Tex.Gen.Laws 370, 370–71; *see also Stracener v. United Serv.*

*Auto. Ass'n.*, 777 S.W.2d 378, 382 (Tex. 1989) (the same policy considerations apply equally to uninsured and underinsured motorist coverage). This 1977 amendment included the statutory precursor to the 1991 amendment to article 5.06–1(2)(d) just quoted. Article 5.06–1(2)(d), as enacted in 1977 and amended in 1991, manifests the legislature's intention to permit insurance companies to limit a single multi-vehicle policy's required underinsured motorist coverage to the stated limit of liability contained in the policy. Part C of the policy, quoted above, appears to comport with the requirements of the statute.[3]

In other circumstances we have found that purported limitations on coverage conflict with the requirements of Tex.Ins.Code art. 5.06–1. *See, e.g., Stracener*, 777 S.W.2d at 384; *Ranzau*, 481 S.W.2d at 797. *Stracener* held that when more than one insurance policy independently provides uninsured or underinsured motorist protection, the coverages may be stacked. *Stracener*, 777 S.W.2d at 382; *see also Westchester Fire Ins. Co.*, 512 S.W.2d at 682 ("[I]n a proper case the total recovery under the several policies may exceed the limits stated in any one policy."); *Ranzau*, 481 S.W.2d at 797.

The difference between today's holding and *Stracener* turns on the compliance of the Upshaws' policy with the minimum requirements of the Insurance Code and the conflict with those requirements of the purported limitations on coverage in the multiple policies in *Stracener*. Thus, we can identify no basis upon which to grant the Upshaws the relief they seek. *Cf. Westchester Fire Ins. Co.*, 512 S.W.2d at 685

(explaining that the apparent inconsistency of a right of recovery under two or more policies issued to a named insured or to relatives, while no such right exists under a single policy, is because the uninsured motorist statute "overrides" certain policy provisions). With multiple insurers, a primary concern is that no single insurer be allowed to avoid liability entirely by pointing to coverage in another insurer's policy. Here, where there is one insurance policy covering several automobiles, there is no danger the single insurer will avoid liability entirely.

In summary, the Upshaws have not identified any overriding public policy arguments for disregarding an unambiguous contract that conforms with the statutory requirements for personal automobile insurance policies providing underinsured motorist coverage. The judgment of the court of appeals is therefore affirmed.

MAUZY, Justice, dissenting.

If George Upshaw had bought two separate auto insurance policies, paying for uninsured/underinsured motorist coverage on each, his beneficiaries would be allowed to stack the coverages under the two policies. Unfortunately, like many policyholders, George Upshaw chose to cover his entire family under one comprehensive policy; and although he paid three separate premiums for uninsured/underinsured motorist coverage, the majority holds that his beneficiaries cannot stack the coverages within the policy. This holding exalts form over substance, and deprives George Upshaw's beneficiaries of the coverage to

---

**3.** A review of cases from other states indicates that while some have allowed intrapolicy stacking on public policy grounds, most have done so either in the absence of an applicable statute, *Safeco Ins. Cos. v. Vetre*, 174 Conn. 329, 387 A.2d 539, 542 (1978); *Tucker v. Government Employees Ins. Co.*, 288 So.2d 238, 241 (Fla. 1973), or based on a statutory mandate, *Davis v. Hughes*, 229 Kan. 91, 622 P.2d 641, 648 (1981); *Sutton v. Aetna Cas. & Sur. Co.*, 325 N.C. 259, 382 S.E.2d 759, 764 (1989), or because the policy at issue was ambiguous. *Jeffries v. Stewart*, 159 Ind.App. 701, 309 N.E.2d 448, 452 (1974). In other jurisdictions, where the applicable statute does not appear to contemplate combining of

policies, stacking has been disallowed. *Nationwide Ins. Co. v. Scarlett*, 116 Idaho 820, 780 P.2d 142, 143 (1989); *Tri–State Ins. Co. v. De Gooyer*, 379 N.W.2d 16, 19 (Iowa 1985); *Charley v. Farmers Mut. Ins. Co.*, 219 Neb. 765, 366 N.W.2d 417, 421–22 (1985); *Cuevas v. Allstate Ins. Co.*, 234 N.J.Super. 461, 560 A.2d 1317, 1319 (1988); *Government Employees Ins. Co. v. Oliver*, 192 Cal.App.3d 12, 237 Cal.Rptr. 174, 178 (1987). Stacking has also been denied when the policy language unambiguously prohibited it. *Leader Nat'l Ins. Co. v. Berry*, 157 Ga.App. 627, 278 S.E.2d 170, 171 (1981); *Hampton v. Allstate Ins. Co.*, 126 Ariz. 403, 616 P.2d 78, 80 (1980, review denied).

which they are entitled under the Texas Insurance Code. I dissent.

The objective of the uninsured/underinsured motorist coverage statute, Tex.Ins. Code art. 5.06–1, is "the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles." Tex.Ins.Code art. 5.06–1(1). The statute is remedial in nature, and is to be construed liberally to give full effect to the public policy which led to its enactment. *Stracener v. United Serv. Auto. Ass'n,* 777 S.W.2d 378, 382 (Tex. 1989). In *Stracener,* this court unanimously concluded that article 5.06–1 requires interpolicy stacking of uninsured or underinsured motorist coverages. In doing so, we emphasized that "[t]hose clauses in insurance policies which are not consistent with and do not further the purpose of article 5.06–1 are invalid." 777 S.W.2d at 384.

Retreating from the court's commitment in *Stracener,* the majority today approves a policy clause of the type that the court formerly condemned. The limitation in Part C of Upshaw's insurance policy establishes a fixed limit of liability for one person's bodily injuries, regardless of the number of separate premiums paid. I would hold that this limitation is inconsistent with the purpose of article 5.06–1, and is therefore invalid under *Stracener.*

The majority defends the policy limitation on the basis of article 5.06–1(2)(d) of the Texas Insurance Code, which was enacted in 1977. Act of May 6, 1977, 65th Leg., R.S., ch. 182, 1977 Tex.Gen.Laws 370. This provision, the majority holds, "manifests the legislature's intention" to permit anti-stacking clauses in insurance policies. 842 S.W.2d at 635. The legislative history of article 5.06–1(2)(d), however, indicates no such intention. The main purpose of the 1977 amendment was to add property damage to those damages from which an insured is entitled to protection. *See* HOUSE

COMM. ON INSURANCE, BILL ANALYSIS, Tex. S.B. 1256, 65th Leg., R.S. (1977); Debate on Tex.S.B. 1256 on the Floor of the Senate, 65th Leg., R.S. (May 2, 1977). Article 5.06–1(2)(d) was adopted as one part of the package expanding the required coverages to include property damage. Neither the Bill Analysis nor the floor debates suggest any legislative intent to allow insurers to limit coverage in the manner the majority now endorses.

If the legislature had intended to adopt anti-stacking language, it certainly could have done so. By 1977, this court had already interpreted article 5.06–1 to require the interpolicy stacking of uninsured motorist coverage. *See American Motorists Ins. Co. v. Briggs,* 514 S.W.2d 233, 236 (Tex.1974); *American Liberty Ins. Co. v. Ranzau,* 481 S.W.2d 793, 797 (Tex.1972). To counter either interpolicy or intrapolicy stacking, the legislature need only have adopted language directly addressing the issue, as other states have done. *See, e.g.,* 18 Del.Code § 3902(c).[1] Article 5.06–1(2)(d) includes no such language; it was aimed at a different problem, and its terms should not be stretched to reach the issue confronted here. *See* Tex. Gov't Code § 311.-023 (Statute Construction Aids).

The majority's expansive reading of article 5.06–1(2)(d) cannot be reconciled with the approach this court took three years ago in *Stracener.* If article 5.06–1(2)(d) is an anti-stacking provision, why does it apply only to *intra* policy stacking, and not to *inter* policy stacking? The statute itself makes no distinction between single-policy and multiple-policy situations.

The majority strives to distinguish *Stracener* on public policy grounds, offering a rationale for the decision that was never actually articulated by the *Stracener* court. With multiple insurers, the majority reasons, an insurer may seek to avoid liability completely, whereas a single insurer must always assume some liability. 842 S.W.2d

---

**1.** "The affording of insurance under this section to more than 1 person or to more than 1 vehicle shall not operate to increase the limits of the insurer's liability. When 2 or more vehicles are insured under 1 policy, the limits of liability shall apply separately to each vehicle as stated in the declaration sheet, but shall not exceed the highest limit of liability applicable to any 1 vehicle."

at 635. The implicit suggestion is that one who is insured under a single policy should be content with the minimum coverage the insurer chooses to afford, even if the insured could have recovered more by paying the same premiums on separate policies.

The availability of stacking should depend solely on whether a premium was charged and paid for additional protection. *See Ranzau*, 481 S.W.2d at 798. An insurer should not be able to collect a premium for statutorily-required protection and then avoid payment with carefully-crafted language of limitation. *See Fidelity & Casualty Co. v. Gatlin*, 470 S.W.2d 924, 927 (Tex.Civ.App.—Dallas 1971, no writ).

The Declarations Page of George Upshaw's policy contains a bold statement: "INSURANCE IS PROVIDED WHERE A PREMIUM IS SHOWN FOR THE COVERAGE." It then shows that a premium of $18.00 was paid for uninsured/underinsured motorist coverage on one of Upshaw's vehicles, and premiums of $17.00 each were paid for coverages on Upshaw's other two vehicles.

I would hold that Upshaw's beneficiaries are entitled to full coverage on each of the policies for which Upshaw paid premiums. I would therefore reverse the judgment of the court of appeals and render judgment for the Upshaws. Because the majority effectively deprives the beneficiaries of their rightful recovery, I dissent.

GAMMAGE, J., joins in this dissenting opinion.

