TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-11-00006-CV






Nealey Michelle Malham, Appellant


v.


Government Employees Insurance Company, Appellee






FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT

NO. 232,480-B, HONORABLE RICK MORRIS, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N


 Nealey Michelle Malham appeals a take-nothing judgment in her suit for benefits
under an uninsured motorist coverage provision contained in her Texas Personal Auto Policy
issued by Government Employees Insurance Company ("GEICO"). We will affirm the trial
court's judgment.


BACKGROUND

 Malham was injured in a motor vehicle accident in which the car in which she was
a passenger was struck by a pickup truck owned by the City of Killeen and driven by a city employee
while in the course and scope of his employment. Malham sued the City and its employee alleging
that she suffered injuries as the result of the employee's negligent acts and omissions and that the
City was vicariously liable for the negligence of its employee. Malham settled her claims against
the City and the employee in exchange for payment to her of $87,500. Thereafter, Malham filed a
claim under the uninsured motorist coverage provision of her GEICO policy seeking to recover
medical expenses related to back surgery she alleges was recommended to treat injuries sustained
in the accident. In the underlying cause of action, Malham sought a declaration that the City vehicle
that struck the car she was riding in was an "uninsured motor vehicle," as that term is defined in her
contract with GEICO, and that she was entitled to recover $300,000 from GEICO under the terms
and conditions of the uninsured-motorist coverage contained in the policy. The parties agreed to a
bifurcated trial whereby they would first try the coverage issues, which presented pure questions of
law, to the court and then set any remaining liability and damages issues for a subsequent jury trial. 
After a bench trial, the court rendered a final take-nothing judgment in GEICO's favor. The court
entered findings of fact and conclusions of law supporting its conclusion that GEICO was not liable
to Malham for the payment of any uninsured motorist benefits under the terms and conditions of her
GEICO policy. This appeal followed.


DISCUSSION

 At the time of the accident, Malham's GEICO policy contained the following
Uninsured/Underinsured Motorist Coverage provision:


 We will pay damages which a covered person is legally entitled to recover from the
owner or operator of an uninsured motor vehicle because of bodily injury sustained
by a covered person, or property damage, caused by an accident.


The parties do not dispute that Malham is a "covered person" or that she was legally entitled to
recover damages from the City as a result of the accident. The sole point of disagreement between
the parties with respect to the above-quoted provision is whether the City vehicle that caused the
accident was an "uninsured motor vehicle" under the GEICO policy.

 The GEICO policy contains, in pertinent part, the following definition:


 I. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:


 1. To which no liability bond or policy applies at the time of
the accident.


. . . .


 II. However, "uninsured motor vehicle" does not include any vehicle or equipment:


. . . .


 2. Owned or operated by a self insurer under any applicable motor
vehicle law.


 3. Owned by any governmental body unless:


 a. the operator of the vehicle is uninsured; and 


 b. there is no statute imposing liability for damage because of
bodily injury or property damage on the governmental
body for an amount not less than the limit of liability for
this coverage.



Malham contends that, under the foregoing provisions, the City-owned vehicle that struck the car
in which she was a passenger was an "uninsured motor vehicle" under the GEICO policy definition
and that the trial court erred in concluding otherwise. We disagree.

 The City is a party to a Liability/Property Interlocal Agreement (the "Agreement"),
which creates the Texas Municipal League Joint Self-Insurance Fund (the "Fund") for the purpose
of "providing coverages against risks which are inherent in operating a political subdivision." (1) The
City and other political subdivisions that are parties to the Agreement are referred to as "Pool
Members." The Agreement incorporates a Texas Municipal League Liability Self-Insurance Plan
(the "Plan") along with accompanying Declarations of Coverage. The liability coverage document
associated with the Plan provides, in part, that "the Fund will pay on behalf of the Member or
Covered Party all sums which the Member or Covered Party shall become legally obligated to pay
as damages . . . because of bodily injury or property damage . . . arising out of the ownership,
operation, use, loading, unloading or maintenance of an automobile." "Covered Party" includes the
Pool Member--in this case the City--and any employee of the City acting within the scope of his
or her duties or employment. The associated "Automobile Declarations of Coverage" provide that
the limit of liability for each occurrence is $2,000,000. (2) The question before this Court, then, is
whether the liability coverage provided for by the Agreement constitutes a "liability policy" as that
term is used in the GEICO policy. We conclude that it does.

 Insurance policies are interpreted according to the general rules of contract
construction. See American Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154, 157 (Tex. 2003). The
primary concern in interpreting a contract is to determine the true intent of the parties. See National
Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995). If a written contract is
so worded that it can be given a definite or certain legal meaning, it is not ambiguous. Id.; Coker
v. Coker, 640 S.W.2d 291, 393 (Tex. 1983). If, however, the language of a policy or contract is
subject to two or more reasonable interpretations, it is said to be ambiguous. CBI Indus. Inc.,
907 S.W.2d at 520. Whether a contract is ambiguous is a question of law for the court to decide. 
Id. When a policy permits only one reasonable interpretation, we construe it as a matter of law and
enforce it as written. See Upshaw v. Trinity Cos., 842 S.W.2d 631, 633 (Tex. 1992). A term not
specifically defined by an insurance policy must be given its plain, ordinary, and generally accepted
meaning, unless consideration of the policy itself shows it to have been used in a different sense. 
See Ohio Cas. Group of Ins. Cos. v. Chavez, 942 S.W.2d 654, 658-59 (Tex. App.--Houston [14th
Dist.] 1997, writ denied). Mindful of these rules of construction, we consider the meaning of the
words "liability policy" in the GEICO policy.

 The word "policy" is defined as a "document containing a contract of insurance." 
Black's Law Dictionary 1276 (9th ed. 2009). "Insurance" means "a contract by which one party (the
insurer) undertakes to indemnify another party (the insured) against risk of loss, damage, or liability
arising from the occurrence of some specified contingency." Id. at 870. "Liability insurance" is "an
agreement to cover a loss resulting from the insured's liability to a third party." Id. at 873. As noted
above, pursuant to the terms of the Agreement, the Fund has undertaken to pay on the City's behalf
all sums which the City is legally obligated to pay as damages for bodily injury or property damage
arising out of the City's use of its automobiles. The Agreement provides coverage, up to specified
limits, for such damages and therefore constitutes a "liability policy" under the plain, ordinary, and
generally accepted meaning of that term.

 Although Malham does not dispute that the Agreement essentially functions as
insurance, she maintains that it does not constitute a "liability policy" under the terms of the GEICO
policy. Malham contends that the term "liability policy" must be strictly construed to mean only a
contract called an "insurance policy" issued by an "insurance company" as those terms are defined
under the Texas Insurance Code. Malham argues that because the Agreement is not one issued by
an insurance company regulated by the State Board of Insurance, it is not "insurance" within the
meaning of the GEICO policy. As an initial matter, we note that the GEICO policy definition of
uninsured motor vehicle does not use the words "insurance policy." Rather, it refers to the absence
of a "liability bond or policy." (3) And there is nothing in the GEICO policy that restricts the term
"liability policy" in the narrow and technical manner urged by Malham. The plain, ordinary,
and generally accepted meaning of the term "liability policy" embodies a broader notion that
includes not only an insurance company-issued insurance policy, but also the type of third-party
liability coverage provided by the Agreement. (4) Consequently, we overrule Malham's first three
appellate issues.

 In issues four, five, and six, Malham contends that the City vehicle is an uninsured 
motor vehicle by virtue of an exception to the GEICO policy's government-owned-vehicle exclusion. 
Malham reads the exception to the exclusion to mean that a government-owned vehicle is an
"uninsured motor vehicle" when (1) the operator of the vehicle is uninsured and (2) there is no
statute imposing liability for damage because of bodily injury or property damage on the
governmental body for an amount not less than the limit of liability for this coverage. There is no
dispute that the second prong is met here. However, Malham asserts that the first prong has also
been met, again relying on her contention that the Agreement is not insurance coverage under the
GEICO policy. Because we have already concluded that the Agreement provides the City and its
employees liability coverage and constitutes a "liability policy," the operator of the City-owned
vehicle was not "uninsured." Consequently, only one of the prongs of the two-prong test has
been met, the exception to the government-owned-vehicle exclusion does not apply, and the
City's vehicle was not an "uninsured motor vehicle" under Malham's interpretation of the
government-owned-vehicle exclusion provision in the GEICO policy. We overrule Malham's
fourth, fifth, and sixth appellate issues.

 In issues seven, eight, nine, and ten, Malham contends that the City-owned vehicle
was uninsured because the City did not meet the requirements of a "self-insurer" under the Texas
Transportation Code. The GEICO policy includes a provision that excludes from the definition of
an "uninsured motor vehicle" any vehicle "owned or operated by a self insurer under any applicable
motor vehicle law." Malham argues that the City's vehicles are not excluded from the definition of
an "uninsured motor vehicle" by virtue of this provision because the City is not a "self insurer" under
Malham's understanding of that term in the GEICO policy. Having already concluded that a
"liability policy" applies to the City's vehicles and that as a result they are not "uninsured motor
vehicles" under the GEICO policy, we need not decide whether the City's vehicle also falls outside
the definition of "uninsured motor vehicle" by application of this exclusion. Consequently, we do
not address the arguments contained in issues seven, eight, nine, and ten.

 Malham's eleventh and twelfth issues address the amount of coverage that would be
available to her under the GEICO policy if the City-owned vehicle were in fact an "uninsured motor
vehicle." Because we have concluded that it is not, we need not address the arguments contained
in issues eleven and twelve.


CONCLUSION

 The trial court did not err in concluding that the City-owned vehicle that caused the
accident for which Malham seeks to recover damages was not an "uninsured motor vehicle" as that
term is used in the GEICO policy. The trial court's judgment that Malham take nothing by way of
her claim for benefits under the uninsured motorist provision of that policy is affirmed.


 _____________________________________________

 J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed: February 8, 2012
1. The Agreement describes the Fund as a "risk sharing mechanism to cover liability
exposures."
2. "Occurrence" is defined as "an accident which results in bodily injury or property damage
neither expected nor intended from the standpoint of the Member or Covered Party."
3. Malham agrees that "liability" modifies both "bond" and "policy."
4. We note that the Texas Supreme Court is in accord that the type of coverage provided
by the Agreement is "insurance coverage" as the term is commonly used. See Ben Bolt-Palito
Blanco Consol. Indep. Sch. Dist. v. Texas Political Subdivisions Prop./Cas. Joint Self-Ins. Fund,
212 S.W.3d 320, 322, 327-28 (Tex. 2006) (describing underlying suit as brought by fund member
after fund "denied a claim for benefits under its policy" and issue on appeal as whether "in this
insurance coverage dispute . . . a self-insurance fund composed of local political subdivisions enjoys
governmental immunity against a fund member school district's coverage claim").