IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 46765

| | |
|---|---|
| DEENA K. WOOD, )<br><br>  Plaintiff-Appellant, )<br><br>v. )<br><br>FARMERS INSURANCE COMPANY OF )<br>IDAHO, TOM WOODS INSURANCE, INC., )<br>and THOMAS V. WOODS, )<br><br>  Defendants-Respondents. )<br>_____ )<br>  . | **Boise, November 2019 Term**<br><br>**Opinion Filed: December 20, 2019**<br><br>**Karel A. Lehrman, Clerk** |

Appeal from the District Court of the Second Judicial District of the State of Idaho, Nez Perce County. Jay P. Gaskill, District Judge.

The decision of the district court is affirmed.

Aherin, Rice & Anegon, Lewiston, for appellant. Darrel W. Aherin argued.

Elam & Burke, P.A., Boise, for respondent. Jeffrey A. Thomson argued.

_____

BRODY, Justice.

This appeal arises from an insurance company's denial of a claim for underinsured motorist benefits ("UIM"). Deena Wood was seriously injured in a car collision. At the time of the collision, Wood had auto insurance through Farmers Insurance Company of Idaho, which included $100,000 of underinsured motorist coverage but also contained a provision stating that the amount of coverage would be reduced by the liability limit of the at-fault driver. Because the at-fault driver's bodily injury liability limit was equal to Wood's underinsured motorist limit, Farmers determined that no underinsured benefits were owed to Wood. Wood challenged the denial in district court, arguing in a motion for reconsideration that the offset provision should be declared void as against public policy because it "diluted" UIM coverage. The district court rejected Wood's argument. We affirm the district court's decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In January 2015, Deena Wood was seriously injured in an auto collision. Although the at-fault driver offered to pay the bodily injury liability policy limit ($100,000), Wood's medical expenses exceeded that amount. Wood had $100,000 of underinsured motorist coverage through her Farmers automobile insurance policy. UIM coverage provides coverage in those situations where the at-fault driver has at least the statutory minimum of bodily injury liability coverage, but the amount of liability coverage is not sufficient to compensate the injured party. *See* I.C. § 41-2503(2). UIM coverage is often confused with uninsured motorist ("UM") coverage, which provides coverage when the at-fault driver is uninsured or the at-fault driver's liability insurer is unable to pay due to insolvency. *See* I.C. § 41-2503(1).

Wood filed a UIM claim with Farmers, her insurer. Farmers denied her claim on the grounds that because the at-fault driver's policy limit met or exceeded her UIM limit, her policy did not provide coverage after the offset. Farmers relied on a provision which stated: "The amount of UNDERinsured Motorist Coverage we will pay shall be reduced by the full amount of any bodily injury liability bonds or policies available to any party held liable for the accident regardless of the insured person's actual recovery from the liable party." (Emphasis in original). Wood filed a complaint in district court seeking recovery under the terms of her policy or alternatively on the basis of misrepresentation, professional negligence, and breach of the duty to properly train. Farmers filed a motion for summary judgment on all of Wood's claims, which the district court granted. Wood filed a motion for reconsideration, arguing that the offset provision violates public policy and should not be enforced. The district court denied Wood's motion for reconsideration. Wood filed a timely notice of appeal. The only issue raised on appeal is whether the offset provision as applied to Wood's claim violates Idaho public policy.

## II. STANDARD OF REVIEW

"Whether an insurance contract violates public policy presents a question of law for this Court to resolve." *Eastman v. Farmers Insurance Company*, 164 Idaho 10, 14, 423 P.3d 431, 435 (2018).

## III. ANALYSIS

Wood argues that the district court erred in its conclusion that the offset provision at issue does not violate public policy. Citing *Hill v. American Family Mutual Insurance Company*, 150 Idaho 619, 249 P.3d 812 (2011) and *Eastman v. Farmers Insurance Company*, 164 Idaho 10, 423

P.3d 431 (2018), she argues that any policy provision which "dilutes" UIM coverage is contrary to public policy. Her argument sweeps too broadly. The legislative history and text of Idaho Code section 41-2502 show that the Idaho Legislature envisioned different forms of UIM coverage, including offset coverage.

Before 2008, this Court rejected public policy challenges to UIM provisions because no Idaho statute required automobile insurers to include, or even to offer, UIM coverage in its policies. The Court concluded that no public policy related to UIM coverage existed. *Hill*, 150 Idaho at 623, 249 P.3d at 817 (citing *Andrae v. Idaho Counties Risk Mgmt. Prog. Underwriters*, 145 Idaho 33, 36, 175 P.3d 195, 198 (2007); *Erland v. Nationwide Ins. Co.*, 136 Idaho 131, 133, 30 P.3d 286, 288 (2001); *Farmers Ins. Co. v. Buffa*, 119 Idaho 345, 347, 806 P.2d 438, 440 (1991); *Nationwide Mut. Ins. Co. v. Scarlett*, 116 Idaho 820, 822, 780 P.2d 142, 144 (1989); *Meckert v. Transamerica Ins. Co.*, 108 Idaho 597, 600, 701 P.2d 217, 220 (1985)).

However, this changed with the passage of House Bill 429 in 2008. *Hill*, 150 Idaho at 623, 249 P.3d at 817; Act of March 5, 2008, ch. 69, § 1, 2008 Idaho Sess. Laws 183, 183. By amending Idaho Code section 41-2502 to require automobile insurers to offer UIM coverage, the Idaho Legislature, through House Bill 429, created a public policy applicable to UIM coverage. *Hill*, 150 Idaho at 623, 249 P.3d at 817. Based on this statute, the Court concluded in *Hill* that the legislature intended to protect Idaho's citizens from drivers carrying policies at or above the statutorily required policy levels but who have insurance insufficient to compensate their tort victims. *Id.* at 624, 249 P.3d at 818. The question presented in this case is whether the offset provision in Wood's insurance policy contradicts this policy.

House Bill 429's Statement of Purpose states, "this proposal will require the insurance carrier to provide the named insured a summary statement, approved by the Director of the Idaho Department of Insurance, explaining . . . *different forms of underinsured motorist coverage offered by insurers in Idaho*." Statement of Purpose, H.B. 429, 2008 Leg., RS Doc 17687C1 (emphasis added). Consistent with this purpose, the plain language of Idaho Code section 41-2502 specifically envisions different forms of UIM coverage. It provides that named insureds "shall be provided a standard statement approved by the director of the department of insurance, explaining in summary form, both uninsured and underinsured motorist coverage, *and the different forms of underinsured motorist coverage that might be available from insurers in Idaho*." I.C. § 41-2502(3) (emphasis added).

3

Additionally, the legislature was aware that offset coverage was one type of UIM coverage that might be offered. For example, in one Senate committee hearing, Steve Tobiason, who appeared on behalf of PCI, Property & Casualty Insurance Corporation, testified that there are two basic types of underinsured coverage offered by Idaho insurers—"difference in limits" and "excess"—and gave the following example: "The difference in limits [is] if someone hits you and they have $50,000 and you buy $100,000 of under insured you are covered up to $100,000. If you buy excess coverage they will take the $100,000 and put it on top of the $50,000 so you are covered up to $150,000." S. Com. & Hum. Res. Comm. Minutes, 59th Leg., 2d Sess., at 3 (Idaho Feb. 19, 2008). Tobiason gave similar testimony at a House committee hearing. H. Bus. Comm. Minutes, 59th Leg., 2d Sess., at 2 (Idaho Feb. 5, 2008).

Moreover, the Idaho Trial Lawyers Association (ITLA) made a public policy argument similar to Wood's before the House Business Committee, but the specific language enacted as part of House Bill 429 shows that the legislature rejected that argument. Specifically, the ITLA representative, testified that "this legislation is a good first attempt but it still allows insurance companies to sell 'phantom' insurance, meaning that the amount of an insured's coverage is reduced by the amount of the other party's coverage," and stated that ITLA did not believe that the bill "represents good public policy." H. Bus. Comm. Minutes, 59th Leg., 2d Sess., at 1 (Idaho Feb. 5, 2008). Likewise, the ITLA's statement on House Bill 429, presented during the same hearing, stated that "HB 429 was drafted in its entirety by the insurance industry. Our repeated offers to use compromise language were rejected." *Id.* Nevertheless, the Idaho Legislature enacted House Bill 429, and Idaho Code section 41-2502 now specifically contemplates different forms of UIM coverage.

Finally, House Bill 429's legislative history shows that the legislature considered but ultimately rejected a bill that would have mandated excess-type UIM coverage. Specifically, during the Senate Commerce and Human Resources Committee meeting on House Bill 429, Representative Mathews stated:

> In the 2007 session the House passed an uninsured and under insured automobile insurance disclosures only bill H255. There was a competing bill S1125 relating to the same subject which passed both the Senate and the House. The Governor vetoed the bill on the grounds that it restricted consumer choice and *mandated carriers to offer excess coverage for the under insured*. As a result the mandate correcting this coverage would have driven up the cost of insurance for all consumers without giving consumers a choice between the types of under insured

4

motorist coverage. H429 preserves consumer choice and will give more transparency to automobile liability insurance and will insure that the consumer[']s right to reject or opt out of these coverages are available if they choose to do so. . . . H429 takes the best of both bills and the concerns of the Governor were addressed in this legislation."

S. Com. & Hum. Res. Comm. Minutes, 59th Leg., 2d Sess., at 2 (Idaho Feb. 19, 2008) (emphasis added).

The public policy considerations that led the Court to hold that the provisions at issue in *Hill* and *Eastman* were contrary to public policy do not lead to the same result when applied to Wood's UIM offset coverage. Unlike the provisions in *Hill* and *Eastman*, the offset provision at issue does not *eliminate* UIM coverage if a certain contingency occurs (the contingency being failure to recover the limit of the at-fault driver's policy in *Hill* and injury in a non-owned vehicle with UIM coverage in *Eastman*). Rather, it *reduces* UIM coverage by the limit of the at-fault driver's bodily injury insurance. This results in no UIM benefits being paid to the insured when, as in Wood's case, the insured's UIM limit is less than or equal to the at-fault driver's bodily injury limit. However, where damages exceed the UIM coverage limit, as in Wood's case, an insured will generally receive an amount equal to the limit of their UIM coverage, whether from a combination of their UIM insurance and the liability insurance of the at-fault driver or solely from the liability insurance of the at-fault driver. For example, if the at-fault driver in Wood's case had carried only $25,000 of bodily injury insurance, Wood would have received $25,000 from the at-fault driver's insurance carrier and $75,000 from Farmers.

In addition, paying an additional premium to obtain *additional* UIM coverage would in Wood's case, unlike in *Eastman*, actually result in additional UIM coverage. *See Eastman*, 164 Idaho at 15, 423 P.3d at 436. For example, if Wood had paid an additional premium for $200,000 in UIM coverage, whether through Farmers or through another insurer, she would have received $100,000 in UIM benefits ($200,000 in UIM coverage minus $100,000, the at-fault driver's bodily injury limit). The bottom line is that the legislative history and text of Idaho Code section 41-2502 demonstrate that the Idaho Legislature knew that insurers would offer different kinds of UIM coverage, decided not to require insurers to offer only excess-type UIM coverage, and chose to allow the use of offset-type UIM coverage. The district court did not err when it denied Wood's motion for reconsideration.

## IV. CONCLUSION

In light of the foregoing, we affirm the district court's denial of Wood's motion for

reconsideration. Wood's request for costs and attorney fees is denied because she is not the prevailing party. Costs on appeal are awarded to Farmers pursuant to I.A.R. 40.

Chief Justice BURDICK, Justices BEVAN, STEGNER, and MOELLER CONCUR.